### Edwin Doty v. Patrick Martin.

*Evidence: Agreement to sell physician's practice.* The proofs in this case clearly establish the making of the parol agreement set up in the bill, whereby the defendant sold to the complainant, for the sum of three thousand dollars, certain real estate in the village of Maple Rapids, together with his practice as a physician and surgeon, and agreed not thereafter to practice his said profession in Maple Rapids, or in that vicinity.

*Contracts: Parol agreement: Written instruments: Merger.* The execution of the deed of the real estate, and of a mortgage back to secure the payment of part of the purchase price, cannot be conclusively presumed to embrace all that was agreed upon, so as to exclude parol evidence of what the actual agreement was, under and in part performance of which they were executed; and any distinct and separate portion of the original parol agreement not capable of being embraced in these instruments cannot be treated as merged in them.

*Parol agreement: Deed of third person: Merger.* But in this case, the title to the real estate being in a different person from the one who made the original agreement, and who owned the practice, it is clear that the agreement to sell the practice could not well merge in the deed of the lands executed by such third person.

*Statute of frauds: Agreement not to be performed within a year: Performance.* The parol agreement in this case having been performed within a few days by the conveyance to complainant of the real estate, and by the defendant's putting him in full possession of his practice and removing from the village, it cannot be insisted in defense that the contract was void under the statute of frauds as one not to be performed within a year.

*Equity jurisprudence: Equity pleading and practice: Injunction: Physician's agreement not to resume practice.* The bill in this case is held to be not strictly one for the specific performance of the agreement, but one to restrain the defendant from violating a contract voluntarily performed by him, and from engaging in or resuming a practice contrary to his agreement, and which of right is the property of complainant, in a case where damages would not be a sufficient compensation for the continuous injury done and threatened, and where the remedy at law would otherwise be inadequate to afford complete relief; and the decree granting the injunction prayed is affirmed.

DOTY *v.* MARTIN.

*Equity jurisprudence: Injunction: Extent of restraint.* The nearest villages of any importance being more than twelve miles distant from Maple Rapids, the decree enjoining defendant from practicing his profession in that village or within a distance of six miles from it, is held not open to objection for being too broad.

*Heard October 6. Decided October 19.*

Appeal in Chancery from Clinton Circuit.

*R. Strickland,* for complainant.

*Walbridge & Cook,* for defendant.

MARSTON, J:

The bill in this case was filed to restrain the defendant from practicing his profession of physician and surgeon at Maple Rapids and vicinity contrary to the terms of an oral agreement alleged to have been entered into between the complainant and defendant in August, 1872.

Complainant in his bill alleges, that he is a physician and surgeon, and that about the eighth day of August, 1872, he entered into an agreement with the defendant, who was then a resident and engaged in the practice of medicine and surgery at Maple Rapids, whereby the defendant, in consideration of the sum of three thousand dollars, agreed to convey a certain house and piece of land to complainant, and also his practice as such physician and surgeon, and further agreed that he, the defendant, would not thereafter practice his said profession in Maple Rapids, or in that vicinity; that complainant, after entering into this agreement, removed to Maple Rapids, and immediately commenced the practice of medicine at that place, and has ever since, and still continues in such practice; that upon moving to Maple Rapids the defendant went with him to visit and introduce him to his patients; that the defendant, in pursuance of this agreement, quit his practice at that place, and soon after removed from the state of Michigan; that he has since returned and gone into practice again, and asserts and declares he will follow his business and profession in Maple Rapids and vicinity.

The defendant in his answer admits, that complainant purchased the house and land referred to, which he alleges were owned by Elvira Terwilleger; that he (the defendant) negotiated the sale thereof to the complainant, with the knowledge and consent of Mrs. Terwilleger, for the sum of three thousand dollars, and that on the 5th of August, 1872, Mrs. Terwilleger executed and delivered to complainant a warranty deed of the premises, in consideration of the sum mentioned, a part of which was paid by an assignment of certain mortgages to Mrs. Terwilleger, and by the execution and delivery to her of certain notes secured by mortgage for the balance.

The defendant further admits that prior to this purchase of the real estate he endeavored to sell to complainant his practice, for the sum of one thousand dollars; that he informed complainant he intended to leave Maple Rapids, but that complainant refused to purchase his practice; and he denies that he ever sold his practice to complainant, or agreed with him not to return to, and continue his practice, should he at any time deem it proper to do so.

We have carefully examined the evidence in this case, from which it clearly appears that the defendant originally purchased the lots which were conveyed to complainant, and took the contract in his own name for the same, and that a portion, at least, of his means and labor went into and was used in the erection of the building situate thereon; that he afterwards made certain improvements in and around the house; that defendant's wife is the adopted daughter of Mrs. Terwilleger, and that this property was, some time in 1872, conveyed to Mrs. Terwilleger; and defendant testifies that the consideration for this conveyance was money and means supplied him by Mrs. Terwilleger and her husband during his course of studies, on condition that if he was ever able he should refund the same. The amount of money thus advanced to defendant does not appear very clearly, but it was somewhere in the neighborhood of one thousand dollars.

It is also beyond dispute, that defendant in conversation spoke of and treated this property as though it belonged to him; that he tried to sell it and his practice, asking three thousand dollars for the premises and one thousand dollars for his practice, and that he refused to sell the premises unless he sold his practice also. He testifies that he had a, conversation with complainant about the sale of the premises and of his practice; that he told complainant he was going away. He says: "I stated to him (the complainant) that I was going away, sure; that I had bought a patent-right; that I wanted some good man to take my place. I told him that I wanted to sell my property if I could sell my practice; that I wanted a thousand dollars for my practice and position. * * * I told him I wanted three thousand dollars for my place and a thousand dollars for my practice." The direct evidence in this case establishes the fact to our satisfaction, that an agreement was entered into between the complainant and defendant by which the latter agreed to sell his premises and practice to complainant for the sum of three thousand dollars. To present all the facts here which lead us to this conclusion would render this opinion unreasonably long, and would be of no use or benefit to any except the parties directly interested.

The surrounding circumstances all point to the same conclusion, and would seem to place the fact of such an agreement having been entered into beyond dispute.

It is very certain that the house and lots were not worth more than two thousand dollars. Why, then, should complainant agree to pay three thousand? If he intended or desired to settle in Maple Rapids, he could doubtless have purchased other property at a fair valuation. The defendant had informed him that he (the defendant) was going to leave Maple Rapids at all events, and engage in the patent-right business, so there could be no inducement or reason for his giving defendant one thousand dollars more than the premises were worth in order that defendant might do that which he had already announced his determination to do.

Defendant had repeatedly declared that he would not sell the premises unless he sold his practice, which he valued at one thousand dollars, at the same time, and we fail to find any good reason why, in dealing with complainant, he should have abandoned this his intention, and sold the premises without his practice.    The consideration of three thousand dollars would be the fair value of the premises and practice, whereas, for the premises alone it would be an exorbitant price, and one not likely to be paid under the circumstances.

There is one other reason leading to the same conclusion. There is nothing in the record tending to show that at the time this agreement was entered into the defendant had any intention of ever again resuming his practice at that place. He was about to leave the state and engage in other business which he considered more profitable.    Would he be likely under such circumstances to retain that which could be of no possible benefit to him where he was going?    Is it not altogether more probable that as an inducement to complainant to purchase the premises he would let him have his practice also, more especially if he could obtain a better price for the premises thereby?    We think this is altogether the more reasonable and probable view.    Then the defendant's admissions to parties after the sale, which he does not deny having made, his refusals to visit patients when sent for, assigning as a reason for such refusals that he had sold his practice to complainant, all point to the same conclusion, and leave no doubt in our mind but that such an agreement as is charged was actually entered into.

Counsel for defendant insist that, even should we find such an agreement to have been entered into, the same was merged in the written contract between complainant and Mrs. Terwilleger.

This position cannot be sustained.

*First,*  There was no written contract entered into by and between Mrs. Terwilleger and the complainant.    The title to the real estate stood in the name of Mrs. Terwilleger. She conveyed the same by deed to complainant, he assigning

and executing certain notes and mortgages to her in payment thereof. This was done in accordance with the oral agreement, and was to that extent a performance of the same. The object for which the deed, mortgage and assignments were made was not for the purpose of stating the contract between the parties or reducing it to writing; the only object was to pass the title to the real estate from Mrs. Terwilleger to the complainant, and to secure to her the payment of a certain amount of money. Such instruments may, in certain cases, be executed and delivered in full performance of an oral agreement, and even vary such agreement. In all such cases the oral agreement would be considered as merged in the written, while in other cases they would be executed and delivered as a performance of a part only of the oral agreement, leaving some separate and distinct portion untouched and unperformed, and here the unperformed part would not be merged. In other words, the execution of a deed and mortgage back cannot be conclusively presumed to embrace all that was agreed upon between the parties, so as to exclude parol evidence of what the actual agreement was, under and in part performance of which they were executed. Suppose, after Mrs. Terwilleger had conveyed the premises to complainant, he had refused to perform on his part, would she thereby be precluded from proving what he had agreed to do? Or, had Mrs. Terwilleger agreed to convey the premises and also the furniture in the house situate thereon to the complainant for a certain sum, and after conveying the premises and receiving the consideration had refused to deliver up possession of the furniture, would the rule we are now considering prevent complainant from proving that he had purchased and paid for the furniture also? We think not.—See *Linsley v. Lovely, 26 Vt., 123 ; Collins v. Tillou, 26 Conn., 374.*

*Second.* The title to the real estate being in Mrs. Terwilleger, the conveyance must come from her. She, however, could not convey to complainant the business mentioned in the other portion of the agreement, viz. : defendant's

right to and good will of his practice.    How, then, can it be said that the part of the agreement which the defendant was to, and Mrs. Terwilleger could not perform, was merged in the deed to complainant and the execution of the securities by him back to Mrs. Terwilleger?    Under such circumstances there could be no merger.

Counsel further insist, however, that even if such a contract was entered into, it was void under the statute of frauds, as one not to be performed within one year from the time it was made.

This contract was entered into August 5, 1872.    The deed was executed the same day.    On the 8th of August, 1872, the complainant entered into actual possession of the premises, and at the same time commenced the practice of his profession as a physician and surgeon.    The defendant went with complainant on several occasions, introduced him according to the agreement, and shortly after he and his family removed from Maple Rapids and remained away until November, 1873, leaving complainant in the meantime in the undisturbed enjoyment of the business so purchased by him. Here, then, was a contract fully performed by the parties. There was nothing farther to be done by either; each had fully and completely performed the contract on his part.    It is true the complainant had not reaped all the benefits which it may be supposed he expected to derive from this contract. How long he should continue in the enjoyment of those benefits, if not interfered with, would depend upon other circumstances, over some of which perhaps he would have no control; the time might extend through one year, or a series of years.    The fact that he might, or even the certainty that he should, continue the practice of his profession at that point for a number of years, would not bring the case within that clause of the statute which we are now considering.    Suppose defendant had sold and delivered to complainant a horse, buggy and harness, to enable him to practice his profession, would the fact, that in all probability complainant would remain in the possession of such property

for over one year, bring such agreement within this clause of the statute, make void the agreement, and enable defendant at the expiration of the year to claim the property? Yet, wherein lies the difference? Here was a sale of the right to engage in and carry on a certain business up to that time carried on by the defendant. This was a right which the law would have protected. It was property; it was valuable; it was the subject of sale, and these parties so understood and treated it. The defendant sold this valuable right to complainant, and so far as he could he put the complainant in possession of it. This was all he had agreed to do, and it was all he could do on his part to make the transaction complete. The complainant had paid for it as he agreed, so that, so far as these parties were concerned, the contract was fully executed and performed. Time was required only to enable complainant to reap the fruits of his contract, and the defendant had no longer the right or power to control or in any way interfere with the complainant's enjoyment of what he had thus bargained for and received. In our opinion this case is not affected by the statute of frauds, and although there are other grounds for coming to the same conclusion, we consider the above sufficient.

The bill in this case is not strictly a bill filed for the purpose of enforcing specific performance of the agreement. It is filed for the purpose of restraining defendant from violating a contract voluntarily performed by him, and from engaging in or resuming a practice contrary to his express agreement, and which of right belongs to and is the property of another, in a case where damages would not be a sufficient compensation for the continuous injury done and threatened, and where the remedy at law would otherwise be inadequate to afford complete relief.

Defendant also complains in that the decree enjoins him from practicing his profession in Maple Rapids, or within a distance of six miles from that place. As the nearest villages of any importance are more than twelve miles distant

from Maple Rapids, we do not think the defendant has any right to complain. If either has a right to complain on this account, it is the complainant, and not the defendant.

The decree of the court below must be affirmed, with costs.

The other Justices concurred.