ROLAND *v.* KENZIE.

1. CONTRACTS — AGREEMENT NOT TO COMPETE — EXCEPTION FROM STATUTE.

Agreement restricting competition where only object of restraint imposed by contract is protection of vendee of good will of a business or profession, without intent to create a monopoly, is specifically excepted from statutory prohibition of noncompetition agreements (CL 1948, §§ 445.761, 445.766).

2. SAME—SALE OF OPTOMETRY PRACTICE—USE OF SELLER'S NAME AND TELEPHONE NUMBER.

Use by the buyer of optometrist's practice of the name and telephone number of the seller is not within the scope of statute prohibiting misleading advertising and statements by persons licensed under statute governing practice of optometry, and is proper subject of covenant in contract of sale (CLS 1961, § 338.258).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 36 Am Jur, Monopolies, Combinations, and Restraints of Trade § 58 *et seq.*
[3] 38 Am Jur 2d, Good Will § 14.
[4] 17 Am Jur 2d, Contracts §§ 178, 254.
[5, 6] 22 Am Jur 2d, Damages § 218.

3. SAME—SELLER OF PROFESSIONAL PRACTICE MAY NOT DESTROY
GOOD WILL.

> One who sells a professional practice and good will may not
> derogate from his own assignment, nor is he at liberty to
> destroy what he transferred, or depreciate what he sold.

4. SAME—CONSTRUCTION—ILLEGALITY.

> A contract will not be adjudged illegal where it is capable of a
> construction which will uphold it and make it valid.

5. SAME—LIQUIDATED DAMAGES.

> A provision for reasonable damages in a contract will be held
> to be liquidated damages and not a penalty in cases where
> actual damages resulting from a breach are uncertain and
> difficult to ascertain, or are of a purely speculative character,
> and the contract furnishes no aid in determining the amount of
> damages.

6. SAME—LIQUIDATED DAMAGES.

> Agreement by which vendor of optometry practice agreed to
> stipulated damages of $7,000 for breach of covenant not to
> compete with vendees within 12-mile radius for 3-year period
> *held,* a valid liquidated damages provision and not a penalty
> where damages were uncertain and difficult to ascertain and
> it appeared parties themselves treated stipulated sum as fair
> compensation for actual damages caused by a breach.

Appeal from Wayne; Moody (Blair, Jr.), J.   Sub-
mitted Division 1 April 2, 1968, at Detroit.   (Docket
No. 4,006.)   Decided June 3, 1968.

Complaint by Dr. Harold Roland against Dr.
Richard Kenzie for liquidated damages for breach
of an agreement not to compete.   Summary judg-
ment for plaintiff.   Defendant appeals.   Affirmed.

*Albert M. Colman,* for plaintiff.

*David E. Kull,* for defendant.

McGREGOR, J.   On July 17, 1961, defendant-appel-
lant sold his optometry practice, equipment, and list

of patients to Dr. Honeyman, plaintiff's associate, under a noncompetitive agreement. He agreed that, for a period of three years, he would not engage in the practice of optometry within a defined geographical area. The agreement stipulated that damages resulting from a breach should be $7,000 because otherwise, damages would be difficult to assess. Plaintiff, appellee herein, who took an undivided one-half interest in the assets by contemporaneous assignment, contemplated by the agreement and later purchased Dr. Honeyman's one-half interest, sued after a subsequently-admitted violation and was granted a summary judgment for $7,000. This appeal proceeds under the theory that the contract is invalid and unenforceable, being against public policy.

For a number of years prior to this sale, defendant had practiced optometry at 21748 Grand River avenue, near 6 Mile and Lahser roads, in the Redford area of Detroit. During 1960, defendant grossed $26,400 from his practice. The sales agreement provided that, within an area having a radius of 12 miles from the intersection of 6 Mile road and Grand River avenue in Detroit, defendant would not compete with plaintiff for a period of three years after the date of the agreement. It also provided that the defendant would consult, when requested so to do by plaintiff, in reference to former patients of the defendant. Such consultations were not to exceed three hours per month. Plaintiff could continue to use defendant's name in the practice of optometry for the three years and could continue to use the telephone listing of defendant. Plaintiff was empowered to send out announcements to the effect that the defendant was associated with him in the practice of optometry.

In July, 1963, defendant opened an office for the practice of optometry in Plymouth, Michigan. The

opening was announced by advertisements in the
Livonia Observer and the Redford Observer, and
it is noted that in the ads published in the news-
papers, defendant used the designation "formerly
at Grand River and Lahser". Defendant mailed out
announcements of his new location, some of which
were received by his former patients, whose names
were on the list of patients which was included in
the sale of July 17, 1961.

At trial, most of the facts were stipulated. It
was further stipulated that, if the contract between
the parties was valid, it had been breached. It was
further agreed that issues for decision by the court
were: (1) whether or not the agreement was valid;
(2) if any part of the agreement was illegal, could
such illegality be severed from the contract and
the balance be saved; and (3) whether the provision
for liquidated damages was valid.

The trial court decided all of the issues in favor
of the plaintiff-appellee and a judgment was entered
in his favor in the amount of $7,000 plus interest.
It is the contention of the defendant that the con-
tract is unenforceable because it is contrary to the
public policy of this State, in that the use of defend-
ant's name, announcement of defendant's associa-
tion with plaintiff in the practice of optometry, and
the use of defendant's telephone listing defrauds,
deceives, and misleads both the old and new patients
of plaintiff.

Defendant admitted the breach of the noncompe-
tition agreement, but, as justification, advanced
claimed violations of statutory provisions[1] relative

---

[1] CLS 1961, § 338.258(h) (Stat Ann 1968 Cum Supp § 14.648[h]),
in part provides:

"It shall be unlawful: * * * for any person registered under
this act, * * * to publish or circulate or print or cause to be
printed, by any means whatsoever, any advertisement or notice in
which said advertisement or notice appears, any untruthful or mis-

to the practice of optometry. This case does not involve a contract which is contrary to a statute, but involves the enforcement of the noncompetition clause of a contract which falls exactly within the terms of the statute.[2] A bargain made between professional men providing for a reasonable restraint on competition in order to realize the good will of a practice will be sustained. *Doty* v. *Martin* (1875), 32 Mich 462.

The trial judge stated in his opinion in the instant case, which we quote with approval:

"It is uncontested that the specific provisions of the contract sought to be enforced by plaintiff * * * is an appropriate and legal provision limiting the competitive ability of the defendant in order for a reasonable period of time to protect the good will of the profession transferred. Such is statutorily allowed in Michigan as found at CL 1948, § 445.766 (Stat Ann 1962 Rev § 28.66 [quoting the statute]).

"Such provisions reasonably limiting the range of competition by professional practitioners is generally recognized. 36 Am Jur, Monopolies, Combinations and Restraint of Trade, § 58, p 539, states as follows:

---

leading statement, or anything calculated or intended to mislead or deceive the public or any individual."

[2] CL 1948, § 445.761 (Stat Ann 1962 Rev § 28.61) provides in part:

"Sec. 1. All agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession, or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

CL 1948, § 445.766 (Stat Ann 1962 Rev § 28.66) provides in part:

"Sec. 6. This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a * * * profession * * * or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly."

" 'A professional practitioner who sells his practice may as an incident thereto make a reasonable agreement not to practice his profession so as to compete with the purchaser. Generally no distinction is made between the agreements of professional men and those of tradesmen.'

"Accordingly, the basic attempt by the parties hereto to reasonably restrain Mr. Kenzie from pursuing his profession within a reasonable area for a reasonable period of time is an appropriate and acceptable provision in a contract relating to the sale of a professional business.

"The retention of a telephone number under Kenzie's name is a manifestation of the intent and actual desire of the parties to effectuate a full transfer of the good will of the Kenzie professional business to the purchaser. The same could be said of the use of the name. This was established not for the purpose of public deception but to assure a carry-over of good will for valuable consideration. *  *  * The court finds as a matter of law no deception was intended nor resulted to the general public and accordingly the provision in the contract is not illegal nor void."

In *Colton* v. *Duvall* (1931), 254 Mich 346, 350, it is said:

"Defendant will not be permitted to derogate from his own assignment. He is not at liberty to destroy what he transferred or depreciate what he sold. There was an implied covenant on the sale of the good will of the business by defendant that he would not solicit the custom which was paid for and parted with. It was a fraud to sell that which he did not mean the purchaser to have; to pocket the paid price and attempt to recapture the thing sold; or to solicit or attempt to decoy it away from plaintiff, or call it back to himself before plaintiff had time to attract it to himself and make it his own. Defendant cannot impair the value of what he sold

or sell the business and its good will, take the price paid, and keep or retake the thing sold. These principles are elementary and have been repeatedly stated by the English and American Courts."

Defendant's contention that provisions in the contract are illegal by virtue of the statutory provisions is a misapplication of the statute. The consultation arrangement by which defendant would consult with plaintiff concerning former patients continuing under the care of the plaintiff was within the contemplation of the parties to the agreement. It was a natural consequence of defendant's continuing professional relationship in the care and treatment of former patients.

A careful examination of the rule of law concerning the sale of good will and the use of a name indicates that, in the absence of a specific provision in the contract, a purchaser does not acquire the use of a name, nor the right to use a seller's name. A reasonable use by a purchaser of a seller's name may be the subject of a covenant in a contract of sale.

"Formulated from modern decisions, we have the rule that contracts in partial restraint of trade, based upon a valuable consideration and reasonable in their operation, are legal, and that, when a party sells his business and the good will thereof, it is competent for the vendor to contract that he will not engage in like business in a certain place. * * * Moreover, it is abundantly established by the authorities that no distinction is made between contracts in restraint of trade entered into by professional men, such as physicians, surgeons, lawyers, and dentists, and those of tradesmen. * * * *Hoyt* v. *Holly*, 39 Conn 326 (12 Am Rep 390)." *Thompson Optical Institute* v. *Thompson* (1925), 119 Ore 252, 262 (237 P 965, 969).

Every presumption is allowed in favor of a legal purpose and a contract will not be adjudged to be illegal where it is capable of a construction which will uphold it and make it valid. It was competent and proper for the parties to ascertain and fix for themselves the amount of damages for the breach of a covenant not to compete, and under the circumstances of the instant situation, the stipulated damage provision was not illegal.

"The damages to arise from the breach of this covenant, from the nature of the case, must be not only uncertain in their nature, but impossible to be exhibited in proof, with any reasonable degree of accuracy, by any evidence which could possibly be adduced. It is easy to see that while the damages might be very heavy, it would be very difficult clearly to prove any. Their nature and amount could be better estimated by the parties themselves, than by witnesses, courts, or juries. It is, then, precisely one of that class of cases in which it has always been recognized as peculiarly appropriate for the parties to fix and agree upon the damages for themselves. *Jaquith* v. *Hudson* (1858), 5 Mich 123, 140; cited with approval in *Worley* v. *McCarty* (1958), 354 Mich 599, 604.

Evidently the parties themselves treated the stipulated sum as fair compensation for actual damages of a breach. From the uncertain nature of the damages, we cannot say that the sum in this case exceeds the actual damages, or that the principle of compensation has been violated.

If the actual damages are uncertain and difficult to ascertain, or are of a purely speculative character, and the contract furnishes no aid in determining this amount, a provision for reasonable damages will be held to be liquidated damages and not a penalty. *Central Trust Company* v. *Wolf* (1931), 255 Mich 8.

In *Curran* v. *Williams* (1958), 352 Mich 278, it was held that a provision for liquidated damages for breach of contract will be regarded as enforceable, and not as a penalty, where it embraces the principle of just compensation for the loss or injury actually sustained. That case stated the matter succinctly at p 282:

"It is a well-settled rule in this State that the parties to a contract can agree and stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. Such a stipulation is enforceable, particularly where the damages which would result from a breach are uncertain and difficult to ascertain at time contract is executed. If the amount stipulated is reasonable with relation to the possible injury suffered, the courts will sustain such a stipulation."

The provisions of the instant contract are not against public policy nor do they violate Michigan statutory law. This was a valid contract.

Affirmed. Costs to appellee.

J. H. GILLIS, P. J., and FITZGERALD, J., concurred.