REDFERN v R E DAILEY & COMPANY

Docket No. 73542. Submitted May 9, 1985, at Detroit.—Decided October 7, 1985. Leave to appeal denied, 424 Mich —.

Roy Redfern an employee of Midwest Mechanical Contractors, Inc., died as a result of injuries sustained while performing repair work on a UNOX waste water treatment system at the Wyandotte Waste Water Treatment Facility. Pauline K. Redfern, as executrix of the estate of Roy Redfern, brought a wrongful death action in Wayne Circuit Court against R. E. Dailey & Company, which was the general contractor for the construction of the waste water facility, the Wayne County Board of Road Commissioners, which was owner of the waste water facility, Union Carbide Corporation, which designed and manufactured the UNOX system, Midwest Mechanical Contractors, Inc., which had been subcontracted to install and do warranty repair work on the UNOX system, and Chemineer, Inc., which had designed and produced the faulty agitator which had led to Redfern's injuries. Union Carbide brought a third-party indemnity action against Midwest, based upon an indemnity provision in the subcontracting agreement between Union Carbide and Midwest. Plaintiff settled with defendants, with the parties stipulating that Roy Redfern and Chemineer, Inc., were each partly negligent. Union Carbide, while denying liability and negligence, agreed to contribute $141,500 toward the settlement. Of the $141,500 paid by Union Carbide, $70,000 was contributed by Midwest. Union Carbide proceeded on its indemnity claim against Midwest as to the remaining $71,500. Following a bench trial on the indemnity claim, the trial court, William L. Cahalan, J., found that Roy Redfern alone was

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Indemnity §§ 15-18.
   Subrogation of employer's liability insurer to employer's right of indemnity against negligent employee. 53 ALR3d 631.
[2] Am Jur 2d, Indemnity § 10.
   See the annotations in the ALR3d/4th Quick Index under Public Policy.
[3, 4] Am Jur 2d, Indemnity § 36.
   Construction of provision and compromise and settlement agreement for payment of costs as part of settlement. 71 ALR3d 909.

negligent and returned a judgment of no cause of action on the basis that Redfern's negligence could not be imputed to Midwest. On motion of Union Carbide, the trial court set aside the prior judgment, determined that Redfern's negligence could be imputed to Midwest and entered judgment in favor of Union Carbide on its indemnity claim. The trial court, over Midwest's protestations as to the reasonableness of the alleged fees, granted in full Union Carbide's claim for attorney fees expended in its defense in the principal action. Midwest appealed. Union Carbide cross-appealed. *Held:*

1. While indemnity agreements in construction agreements are statutorily void to the extent that they seek to guarantee indemnification for the sole negligence of the indemnitee, and while the indemnity agreement involved here is broad enough to be read to indemnify Union Carbide for its sole negligence, an indemnity provision will not be held to be void where, as here, there is no claim that indemnity should be granted if the indemnity claim arises out of the sole negligence of the indemnitee.

2. It is unnecessary to determine whether the trial court erred in imputing Redfern's negligence to Midwest. While it is contrary to public policy to have an indemnity provision in a construction contract that guarantees indemnification for the sole negligence of the indemnitee, it is not contrary to public policy to have an indemnity agreement which requires a nonnegligent indemnitor to indemnify a nonnegligent indemnitee. Since Union Carbide was found to be not negligent, the indemnity agreement was enforceable against Midwest irrespective of whether Redfern's negligence was imputable to it.

3. The indemnity provision in the contract clearly provided that Midwest would indemnify Union Carbide for "expenses of any character" and thus clearly provided for indemnification of attorney fees incurred in Union Carbide's defense in the principal action. However, since only reasonable attorney fees should be assessed, and since Midwest's objections clearly preserved its right to have the trial court pass upon the reasonableness of the claimed attorney fees, it is necessary to remand to the trial court for findings as to the reasonableness of the claimed attorney fees.

Affirmed in part and remanded.

1. INDEMNITY — CONTRACTS — NEGLIGENCE — PUBLIC POLICY — JUDICIAL CONSTRUCTION.

A provision in a construction contract which might be construed to guarantee indemnification for the sole negligence of the indemnitee and which would thereby be void as against public

policy will not be so construed where the indemnitee makes no claim that the indemnity language in the contract should be applied if the underlying claim arose out of the sole negligence of the indemnitee, since courts will not construe the language of an agreement so as to make the agreement illegal if such a construction can be reasonably avoided (MCL 691.991; MSA 26.1146[1]).

2. INDEMNITY — CONTRACTS — NEGLIGENCE — PUBLIC POLICY.

An indemnity provision in a construction contract is not contrary to public policy because it requires that the indemnitor indemnify the indemnitee even though the indemnitor is free from negligence where the indemnitee is also free from negligence; it is only where the indemnitor is free from negligence and the indemnitee is solely negligent that a construction contract indemnity provision is contrary to public policy (MCL 691.991; MSA 26.1146[1]).

3. INDEMNITY — COSTS — ATTORNEY FEES.

Reasonable attorney fees incurred by an indemnitee in the defense of the principal action are recoverable from the indemnitor where the indemnity agreement provides that the indemnitor will indemnify and hold harmless the indemnitee against all claims, liabilities, losses, damages and expenses of every character whatsoever.

4. INDEMNITY — COSTS — ATTORNEY FEES — REASONABLENESS — FINDINGS OF FACT.

The trial court in an indemnity action, where the indemnitor challenges the reasonableness of the attorney fees allegedly incurred by the indemnitee in the defense of the principal action, must make findings of fact as to the reasonableness of the attorney fees that are being sought.

*Dykhouse & Wise* (by *Robert A. Marsac* and *Joseph E. Hurley*), for Union Carbide Corporation.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Fred W. Gerow* and *Ernest R. Bazzana*), for Midwest Mechanical Contractors, Inc.

Before: WAHLS, P.J., and J. H.GILLIS and S. EV-ERETT,* JJ.

WAHLS, P.J. Midwest Mechanical Contractors, Inc., appeals as of right from a judgment in favor of Union Carbide Corporation finding contractual indemnity and awarding attorney fees.

This case arose out of an accidental death in connection with warranty repair work at the Wyandotte Waste Water Treatment Facility. Midwest had been subcontracted to install a UNOX waste water treatment system. The design and manufacture of the UNOX was contracted to Union Carbide, which in turn contracted the design and manufacture of agitator components to Chemineer, Inc. Midwest installed the system and, pursuant to a contract with Union Carbide, was responsible for the warranty repair work.

Plaintiff's decedent, Roy Redfern, was an employee of Midwest and a supervisor of both the original installation of and the warranty repair work on the UNOX system. On April 30, 1976, Redfern was on the job site in connection with warranty repair work. A nonfunctioning agitator was discovered to have a broken component manufactured by Chemineer. Redfern sought to retrieve the component and was seriously injured when the agitator moved. His wounds were contaminated by the waste material in the agitator cell and he died 39 days later.

Plaintiff filed suit on April 28, 1977, seeking damages for the alleged wrongful death of her husband. Plaintiff settled her claim four years later on April 17, 1981. The parties stipulated that Redfern and Chemineer were partly negligent and Chemineer would pay $311,500. Union Carbide denied liability and negligence, but agreed to con-

* Circuit judge, sitting on the Court of Appeals by assignment.

tribute $141,500 toward the settlement. Claims against the general contractor and the Board of County Road Commissioners were dismissed with prejudice.

Of the amount paid by Union Carbide, $70,000 was contributed by Midwest. The remaining $71,-500 was subject to a later determination in Union Carbide's third-party indemnity action against Midwest. Union Carbide's third-party complaint alleged contractual indemnity. Prior to trial, Union Carbide moved to amend its complaint to include a theory of recovery based on breach of an implied warranty of workmanlike performance by Midwest. The motion was denied, as was Midwest's motion for summary judgment claiming that the indemnification agreement was void pursuant to MCL 691.991; MSA 26.1146(1).

Trial came on before the court, and a judgment of no cause of action was entered in favor of Midwest. The court found that Redfern alone was negligent, but concluded that his negligence could not be imputed to Midwest. Union Carbide then moved for a new trial or, in the alternative, a judgment notwithstanding the verdict.[1] The trial court granted judgment notwithstanding the verdict, concluding that its prior opinion was in error and Redfern's negligence could be imputed to Midwest through the doctrine of *respondeat superior.*

## I

Midwest first argues that the court erred rever-

---

[1] Union Carbide's motion should have been denominated for new trial only. The relief Union Carbide sought was fully provided for under GCR 1963, 527.1. See now MCR 2.611(A). There was no occasion to seek relief under GCR 1963, 515.2 for judgment notwithstanding the verdict, because there was no verdict. This case involved a bench trial concluding in a decision ,and judgment of the court. "Verdict" refers to a decision of a jury. See Black's Law Dictionary (Rev 4th Ed), p 1730.

sibly in denying Midwest's motion for summary judgment. Midwest argues that, because the indemnity agreement between Midwest and Union Carbide was broad enough to provide indemnification of Union Carbide for liability arising out of its sole negligence and, to that extent was void,[2] and because the void section could not be severed from the rest of the agreement, the entire indemnity agreement was void.

The indemnity agreement between Midwest and Union Carbide provides:

"Contractor [Midwest] shall indemnify and save harmless Owner [Union Carbide], its employees and agents, against all claims, liabilities, losses, dmages and expenses, of every character whatsoever, for bodily injury, sickness and/or disease, including death at any time resulting from such bodily injury, sickness and/or disease sustained by any person (including but not limited to empolyees of Owner, of Contractor or of a Subcontractor of Contractor) while in, on or about the premises of Owner or the site of the Work, if or where such injury, sickness, disease and/or death arose out of or was in any way connected with the Work or with the performance of or failure to perform the Work, *whether or not such injury, sickness, disease and/or death was caused by, resulted from or was in any way connected with the negligence of Owner, its employees, or agents."* (Emphasis added.)

---

[2] MCL 691.991; MSA 26.1146(1) provides:

"A covenant, promised, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable."

The act's stated purpose is "to invalidate certain requirements for indemnity in the construction industry". The act changed the common law. *Blazic v Ford Motor Co,* 15 Mich App 377; 166 NW2d 636 (1968), *lv den* 382 Mich 758 (1969).

In *Tope v Waterford Hills Road Racing Corp,* 81
Mich App 591, 594-596; 265 NW2d 761 (1978), *lv
den* 405 Mich 822 (1979), this Court considered a
contract with language similar to that emphasized
above and concluded that, construing the indem-
nity clause strictly against the indemnitee, the
language was unequivocal in exempting the in-
demnitee from liability for damages sustained by
the plaintiff because of the indemnitee's *own* negli-
gence. However, the Court was not faced with the
question of the applicability of the language to
liability for damages caused by the indemnitee's
*sole* negligence.[3] The question appears to be one of
first impression.

The indemnity agreement in this case occupies a
middle ground between other indemnity agree-
ments in construction contracts reviewed by this
Court. On the one side are agreements which
expressly provide that indemnity does not extend
to liability for damages caused by the indemnitee's
sole negligence. This Court has obviously approved
such agreements and has concluded that they
provide indemnity against liability for damages
caused by the indemnitee's concurrent negligence.
*Harbenski v Upper Penninsula Power Co,* 118
Mich App 440; 325 NW2d 785 (1982), *lv den* 417
Mich 1078 (1983); *Giguere v Detroit Edison Co,* 114
Mich App 452; 319 NW2d 334 (1982), *lv den* 414

[3] The relevant contract in *Tope* was not a construction contract so
MCL 691.991; MSA 26.1146(1) did not apply. Therefore, any distinc-
tion between "own" and "sole" negligence was irrelevant. With
regard to other cases where the question arose whether indemnity
agreement language applied to an indemnitee's own negligence, this
Court said in *Peoples v Detroit,* 99 Mich App 285, 296, FN1; 297
NW2d 839 (1980):

"When we refer to the indemnitee's 'own negligence', we no not
refer to the situation where he is solely or 100 percent liable for the
resulting injury. Instead, we refer to those situations involving con-
current negligence, where both the indemnitee and the indemnitor
are negligent. The indemnitee's 'active' negligence can be anywhere
from 1 percent to 99 percent."

Mich 961 (1982); *Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981). On the other side are agreements which expressly provide for indemnification against liability for damages caused *in whole or in part* by the indemnitee's negligence. In such cases, this Court has severed the offending language relating to the indemnitee's sole negligence and upheld the contract as it related to the indemnitee's concurrent negligence. *Robinson v A Z Shmina & Sons Co,* 96 Mich App 644; 293 NW2d 661 (1980); *Ford v Clark Equipment Co,* 87 Mich App 270; 274 NW2d 33 (1978); *Robertson v Swindell-Dressler Co.,* 82 Mich App 382; 267 NW2d 131 (1978), *lv den* 403 Mich 812 (1978).

The court below relied on the latter cases and ruled that the indemnity agreement between Midwest and Union Carbide was void "insofar as the language relates to one hundred percent negligence on the part of the indemnitee, * * * [b]ut insofar as it relates to the concurrent negligence, that is, the negligence of one percent to ninety-nine percent on the part of the indemnitee, it is valid". Midwest is correct in noting that the court did not and could not sever offending language as was done in the above cases. Nonetheless, we approve the result reached by the trial court.

The issue here is very similar to that presented to this Court in *Klann v Hess Cartage Co,* 50 Mich App 703; 214 NW2d 63 (1973). In that case, the parties had a lease agreement providing that the lessee would not be liable for loss of, or damage to, the leased equipment, "however caused". Plaintiff sued for loss of the equipment, alleging that the loss was due to the defendants' negligence. This Court stated,

"Plaintiff contends that the words 'however caused'

could be construed to exempt defendants from liability for gross negligence or intentional acts of misconduct. If this clause was so construed, it would, to that extend, violate public policy. But here, plaintiff alleges only negligence. An indemnity provision which would be invalid if appied to indemnify a person from liability for his wilful and wanton wrongdoing may, nevertheless, be validly applied to indemnify him from liability for his negligent acts. *Thomas v Atlantic C L R Co,* [201 F2d 167, 170 (CA 5, 1953)]." *Klann, supra,* p 709.

We find the analysis of *Klann* applicable to the instant case. Union Carbide has denied that it was solely negligent (or negligent at all, for that matter) and has not sought to interpose the indemnity agreement in the event of a finding of sole negligence. Union Carbide is allowed every presumption in favor of a legal purpose for the indemnity agreement. *Roland v Kenzie,* 11 Mich App 604, 611; 162 NW2d 97; 62 ALR3d 912 (1968). We will not construe the agreement so as to make it illegal if such construction can be reasonably avoided. *Millen v Potter,* 190 Mich 262, 273; 157 NW 101 (1916); *Roland, supra.* See *Parliament Construction Co v Beer Precast Concrete, Ltd,* 114 Mich App 607, 615; 319 NW2d 374 (1982). We are persuaded that the indemnity agreement is not void on its face. Accordingly, Midwest's motion for summary judgment pursuant to GCR 1963, 117.2(1) was properly denied.

## II

Midwest next argues that the trial court erred in imputing Roy Redfern's negligence to Midwest, his employer, and in determining that Union Carbide's liability was not the result of its sole negligence.

We note initially that the trial court made the

factual finding that Union Carbide was not negligent with respect to Redfern's death. Midwest has not challenged that finding as clearly erroneous on the basis that the finding is not supported by record evidence. GCR 1963, 517.1, see now MCR 2.613(c). Midwest's only argument that Union Carbide was negligent seems to be based on the faulty logic that, because Union Carbide has a liability for $71,500 and Midwest was not negligent, then the liability must be due to Union Carbide's negligence. However, Union Carbide's liability was the result of a settlement (which Midwest does not challenge on appeal) and was not the result of a finding or admission of negligence. Accordingly, Union Carbide's freedom from negligence is a basic premise of our analysis.

According to the unequivocal terms of the indemnity agreement, Midwest promised to indemnify Union Carbide against liability for bodily injury, including death at any time resulting from such injury, sustained by any Midwest employee while on the work site, where the injury or death arose out of or was in any way connected with the work. Union Carbide's liability for Redfern's death fits within these terms, so Midwest must honor its agreement. Because Union Carbide was not negligent, Midwest cannot rely on the public policy stated in MCL 691.991; MSA 26.1146(1) to avoid its obligation under the agreement.

Midwest relies on an oft-cited statement in *Nanasi v General Motors Corp,* 56 Mich App 652, 660; 224 NW2d 914 (1974), that, although a contract clearly provides for indemnity for the indemnitee's negligence, the indemnitor will not be liable under the contract, as a matter of public policy, unless it is also negligent. However, it should be clear that this Court's statement in *Nanasi* assumed that the indemnitee was negligent. In the instant case,

Union Carbide, the indemnitee, was found not negligent. Because Midwest's negligence or lack thereof is thus irrelevant under the facts of this case, it is unnecessary to decide whether Redfern's negligence can be imputed to Midwest.[4]

Midwest also relies on *Parliament Construction Co, supra,* which it cites for the proposition that, "where there is a finding of no negligence by the party from whom contractual indemnity is sought, indemnification cannot be had". Midwest misinterprets what occurred in that case. Because the indemnitee was negligent, but the deceased, the employer, and the two indemnitors were all not negligent, this Court could only conclude that the indemnitee was *solely* negligent. The indemnitee's claim was, therefore, at odds with MCL 691.991; MSA 26.1146(1) and could not be allowed to stand.

For the reasons stated above, the trial court properly concluded that Union Carbide was entitled to indemnification.

### III

Midwest lastly argues that the trial court erred in awarding attorney fees in favor of Union Carbide. The attorney fees were awarded in the judgment notwithstanding the verdict. Specifically,

[4] In *Paquin v Harnischfeger Corp,* 113 Mich App 43; 317 NW2d 279 (1982), this Court found indemnification was required by the contract although the indemnitee was negligent and no determination had been made whether the indemnitor was also negligent. The Court did not explain or acknowledge its apparent departure from the *Nanasi* rule. While the Court relied on the negligence of the indemnitor's employee, it never imputed that negligence to the indemnitor but reached the simple conclusion that the indemnitee could not be solely negligent. Because in the instant case the indemnitee was *not* negligent, it is unnecessary to our decision for us to attempt a resolution of the differences between *Paquin* and *Nanasi* or *Smith v O'Harrow Construction Co,* 95 Mich App 341; 290 NW2d 141 (1980), *lv den* 409 Mich 873 (1980). See *Burdo v Ford Motor Co,* 588 F Supp 1319 (ED Mich, 1984), which favored *Paquin* over *Smith.*

the judgment provided for "71,246.98 plus statutory interest accruing from April 17, 1981 as a result of expenses incurred by Union Carbide Corporation in connection with the defense of the principal action herein".

Midwest contends that the language of the indemnity agreement is not sufficiently clear and unequivocal to afford Union Carbide the right to recover attorney fees. We disagree. It will be recalled that the agreement provided that Midwest would indemnify and save harmless Union Carbide "against all claims, liabilities, losses, damages *and expenses of every character whatsoever"* (emphasis added). We conclude that Union Carbide is entitled to attorney fees pursuant to the terms of the agreement.

Midwest relies on the rule of strict construction of indemnity agreements. *Hayes, supra,* pp 201-202. But *cf. Paquin v Harnischfeger Corp,* 113 Mich App 43, 50-52; 317 NW2d 279 (1982). We would be more sympathetic to Midwest's position if we considered attorney fees to be extraordinary relief. However, the general rule concerning the assessment of attorney fees in an indemnity action is that an indemnitee may recover his "necessary defensive fees". *Hayes, supra.* p 200, quoting 41 Am Jur 2d, Indemnity, § 36, pp 725-727. See also 42 CJS, Indemnity, § 13, pp 585-587. This Court has recognized the right of a party to recover attorney fees where the party is entitled to common law indemnification. *Hartmen v Century Truss Co,* 132 Mich App 661; 347 NW2d 777 (1984). In *Hayes, supra,* however, this Court was hesitant to apply the general rule literally to a case involving an express contract of indemnity. The Court's hesitancy is understandable upon an examination of the indemnity provision before it for review. The indemnity agreement provided that the "Con-

tractor shall indemnify, hold harmless and defend the Owner * * * from and against any and all claims and demands of whatever nature, regardless of the merit thereof". *Hayes, supra,* p 194. It is not at all clear whether this language applies to costs incidental to defending a claim. In contrast, the indemity agreement in the instant case is much broader in scope and includes "losses, damages and expenses".

Midwest contends that, in any event, the trial court never inquired into the reasonableness of the fees. Union Carbide responds that, because the attorney fees were awarded on the contract, the issue of reasonableness is not relevant. Union Carbide also asserts that Midwest's argument has not been preserved for appeal.

Before addressing the parties' contentions, we will set forth the factual background for the claim of attorney fees. In its third-party complaint, Union Carbide requested "reimbursement for any and all expenditures in connection with the defense herein, including attorney's fees, costs and interest". At trial, Union Carbide introduced evidence by way of its Exhibit 11 and testimony that its expenses were $9,336.00. Subsequently, Exhibit 17 was offered as representative of the bills submitted to Union Carbide for legal fees. The exhibit showed a total of $60,910.98 and was received subject to determination of Midwest's objections to its relevancy and reasonableness. When the court granted judgment of no cause of action, it did not address the issue of attorney fees and expenses, not did it do so in its opinion granting judgment notwithstanding the verdict. Nevertheless, Union Carbide proposed a judgment including expenses of $71,246.98. Midwest objected on the grounds that the above figure was of unknown origin and was exorbitant. At a hearing on June 25, 1982, the

parties indicated that the main issue was whether attorney fees were allowed under the indemnity agreement. Midwest's attorney also indicated that the fees were "expensive". The court indicated that Union Carbide should supply exhibits reflecting the attorney fees and it reserved judgment pending review of the parties' briefs. On August 11, 1983, judgment notwithstanding the verdict was entered as proposed by Union Carbide. The court did not specify any findings of fact or conclusions of law on the issue of attorney fees.

We conclude that Midwest has preserved the issue for appeal. Midwest objected on several occasions to the reasonableness of the attorney fees requested by Union Carbide. We have not found any waiver of the objection. We further believe that Midwest is entitled to findings of fact and conclusions of law on the "contested matter" of the reasonableness of the attorney fees. GCR 1963, 517.1, 527.1, and 527.7; see now MCR 2.517(A), 2.611(A)(2), and 2.611(F). We review awards of attorney fees for abuse of discretion. *Superior Products Co v Merucci Bros, Inc.* 107 Mich App 153; 309 NW2d 188 (1981), *lv den* 415 Mich 851 (1982). To perform that review, we must have a record from which we can determine how the court exercised its discretion. *Butt v DAIIE,* 129 Mich App 211, 222-223; 341 NW2d 474 (1983); *Sturgis Savings & Loan Ass'n v Italian Village, Inc,* 81 Mich App 577, 584; 265 NW2d 755 (1978). The record in this case is inadequate for us to carry out our review function in a legitimate fashion. Accordingly, we remand for further proceedings to prepare a record for review of the reasonableness of attorney fees.

As to Union Carbide's contention that reasonableness is irrelevant where a request for attorney fees is brought pursuant to a contract, we refer to

the general rule stated in the encyclopedia that "an indemnitee is entitled to recover, as part of the damages, *reasonable* attorneys' fees" (emphasis added). 41 Am Jur 2d, Indemnity, § 36, p 725. In *Hayes, supra,* this Court, upon finding that the indeminitee was entitled to attorney fees under an indemnity agreement, remanded for assessment of *reasonable* attorney fees. Although we have construed the parties' indemnity agreement to include attorney fees, we will stop short of a construction condoning unreasonable attorney fees. See Code of Professional Responsibility, DR 2-106.

Union Carbide acknowledges that the total dollar amount for the expenses award was derived from trial exhibits 11 and 17. Union Carbide further agrees that the total expenses from Exhibit 11 ($9,336.00) and the total attorney fees from Exhibit 17 ($60,910.98) add up to a sum total of $70,246.98, not the awarded figure of $71,246.98. Accordingly, on remand, the total expenses after reasonable attorney fees are determined shall not exceed $70,246.98.

## IV

Because we affirm Union Carbide's right to indemnification, we need not address the issue raised in the cross-appeal of whether Union Carbide's motion to amend its third-party complaint was properly denied.

Affirmed in part and remanded for further proceedings to determine the reasonableness of attorney fees. We retain jurisdiction.