GORHAM v DENHA

1. Vendor and Purchaser—Land Contracts—Acceleration
   Clauses—Foreclosure—Breach of Contract—Equity Juris-
   diction—Commercial Transactions—Commercial Code.

   A trial court exercising its equity jurisdiction to enforce an
   acceleration clause in a land contract should not dismiss a
   foreclosure action brought under the acceleration clause for
   overdue payment where the breach of contract is not disputed;
   this policy and its rationale should extend to commercial cases
   covered by the Michigan Uniform Commercial Code particu-
   larly in view of the code's policy of encouraging certainty in
   commercial transactions.

2. Secured Transactions—Security Interests—Enforcement—
   Third Parties.

   A security agreement is generally effective according to its terms,
   both between the parties and against subsequent purchasers of
   the collateral (MCLA 440.9201; MSA 19.9201).

3. Secured Transactions—Security Interests—Rights and Reme-
   dies—Enforcement—Judicial Procedure.

   A secured party has the rights and remedies provided for in the
   security agreement and may reduce his claim to judgment,
   foreclose or otherwise enforce the security interest by any

---

References for Points in Headnotes

[1] 15A Am Jur 2d, Commercial Code § 35.

  69 Am Jur 2d, Secured Transactions §§ 322–327, 564, 567.

  What constitutes "good faith" under Uniform Commerical Code § 1-
  208 dealing with "insecure" or "at will" acceleration clauses. 61
  ALR3d 244.

  Right of holder of commercial paper to interest of finance charges
  applicable to period after acceleration of maturity of obligation
  because of debtor's default. 63 ALR3d 10.

[2] 69 Am Jur 2d, Secured Transactions § 328.

[3, 4] 69 Am Jur 2d, Secured Transactions §§ 551, 563–579, 593.

  Purchase by pledgee of subject of pledge. 37 ALR2d 1381.

[5] 69 Am Jur 2d, Secured Transactions § 551.

[6] 69 Am Jur 2d, Secured Transactions §§ 276, 639–646.

available judicial procedure (MCLA 440.9501[1]; MSA 19.9501[1]).

4. SECURED TRANSACTIONS—SECURITY INTERESTS—ENFORCEMENT—RE-
POSSESSION OF COLLATERAL.

A secured party, on default and without an agreement to the contrary, has the right to take possession of the collateral (MCLA 440.9503; MSA 19.9503).

5. SECURED TRANSACTIONS—SECURITY INTERESTS—DEFAULTS—RIGHTS OF CREDITOR—FINANCIAL LOSS.

A security agreement to be truly effective according to its terms requires that any act performed by a debtor in clear contravention of those terms must give the creditor a right to the statutory and agreed upon remedies whether he suffered a pecuniary loss or not.

6. SECURED TRANSACTIONS—SECURITY INTERESTS—DEFAULTS—RIGHT OF REDEMPTION.

A defaulting party in a security agreement has a right of redemption at any time before the secured party has disposed of the collateral, entered into a contract for its disposition or before discharge of the obligation (MCLA 440.9504, 440.9506; MSA 19.9504, 19.9506).

Appeal from Livingston, Bert M. Hensick, J. Submitted April 5, 1977, at Detroit. (Docket No. 28399.) Decided August 8, 1977.

Complaint by Thomas Gorham against Louis Denha and others to recover on a promissory note and security agreement, and for claim and delivery of collateral. Judgment for defendants. Plaintiff appeals by leave granted. Reversed and remanded.

*Lawrence J. Stockler,* for plaintiff.

*Sam W. Haddad,* for defendants.

Before: BEASLEY, P. J., and J. H. GILLIS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiff appeals, by leave granted, the trial court's denial of a motion for summary judgment adjudging defendants to be in default under the terms of a promissory note and security agreement, and permitting plaintiff to exercise the remedy of acceleration and repossession as provided therein.

On September 3, 1974, defendants Denha and Shaya entered into a purchase agreement with plaintiff's predecessor in interest, Diamond Dot Market, Inc., for purchase of a retail grocery store in the City of Howell. The sale was completed on November 25, 1974, when the parties executed a bill of sale, promissory note, and security agreement. Plaintiff duly recorded proper financing statements. Thereafter, defendant Shaya conveyed his interest to defendant Denha.

On December 3, 1975, defendant Denha sold the grocery to defendant Sulaka, retaining a security interest. No notice was provided creditors prior to the sale and plaintiff had no actual notice.

Plaintiff initiated the action for claim and delivery on January 27, 1976. On February 20, 1976, plaintiff filed a motion for summary judgment based on the above facts and the additional factors that none of defendant Sulaka's insurance policies named plaintiff as an additional insured and that defendant Sulaka was in possession of all the collateral. Furthermore, plaintiff did not give prior written consent to the transfer of certain liquor licenses pursuant to the sale of the store.

At the arguments on the motion, it was stipulated that payments on the underlying indebtedness owed by defendants Denha and Shaya to plaintiff were, and have at all times been, current.[1]

[1] After the commencement of this suit, one or more payments have been made and plaintiff has accepted them.

The circuit court found that defendants had "technically defaulted" under the terms of the promissory note and security agreement. But because plaintiff failed to show harm as a result, the circuit court denied the application for an order of claim and delivery and the motion for summary judgment. The circuit court explained that the motion for summary judgment was "otherwise probably well taken", but because plaintiff had failed to persuade the court that he suffered injury as a result of defendants' conduct, the motion was denied.

There is virtually no dispute with the contention that defendants breached provisions of the security agreement,[2] when (1) defendant Shaya sold his interest to defendant Denha, (2) defendant Denha, without notice to plaintiff, thereafter sold the business, including the collateral listed in the security agreement, to defendant Sulaka, (3) plaintiff did not give his prior written consent to the transfer

---

[2] In pertinent part, the security agreement provides:

"7. Maintaining Inventory and Collateral:

" * * * no collateral which is part of Debtor's inventory held for resale to customers at retail in the ordinary course of business or which is covered by this security agreement shall be sold by the Debtor except in the ordinary course of retail trade; * * * .

"8. Assigning Licenses When in Default:

"Debtor agrees not to transfer or assign any of the licenses or permits herein referred to without the prior written consent to be thereon endorsed by the Creditor.

"9. Insurance

"The Debtor further covenants and agrees that Debtor will keep the interests of the Creditor and the collateral covered by this security agreement adequately insured against loss or damage by fire during the continuance of this Security Agreement, and will also maintain adequate extended coverage insurance, burglary, theft, holdup, business interruption, and such other insurance with respect to the collateral, operation and continuity of the business as Creditor may require; that the Creditor shall be named as an insured or in the loss payable clauses thereof, and all such insurance policies or certificates thereof shall at all times be delivered to and maintained in favor of the Creditor superior to the right or claim of any other creditor, claimant or insurance person, * * * ."

of certain liquor licenses to defendant Sulaka and, (4) plaintiff was not named as an additional insured on any of the insurance policies held by defendant Sulaka covering the collateral.

Plaintiff's choice of remedy for the aforementioned breach was clearly set forth in the security agreement:

"10. Covenant to Pay:

* * *

"In the event the Debtor shall * * * fail to perform all of the terms, conditions and covenants contained herein * * * or in the event that the Debtor shall attempt to sell or transfer the whole or any part of the collateral covered by this Security Agreement, or to subject the same to any security interest other than the security interest created hereby, * * * or in the event the Creditor at any time shall deem Creditor insecure in the payment of the secured indebtedness or in the adequacy, maintenance or replenishment of the collateral, then, upon the happening of any of the foregoing events, *the Creditor shall have the option to declare the whole or any part of the secured indebtedness or any other indebtedness of Debtor to the Creditor immediately due and payable, notice thereof being hereby expressly waived; and a demand for possession, whether oral or written, or a seizure of any part of the collateral covered by this Security Agreement shall be deemed an exercise of said option.* In addition upon the happening of any of the foregoing events the Creditor shall have the right, without notice, unless required by law, to enter upon the above-described premises * * * where this collateral or any part thereof may be situated and to take possession of the collateral and to hold the collateral at said premises at the Debtor's expense * * * ." (Emphasis added.)

We must decide the appropriateness of its use. It should be noted that the trial court's action in denying the motion for summary judgment runs

counter to the established judicial policy of enforcing similar acceleration clauses in cases involving land contracts, *Cooper v Jefferson Investment Co,* 70 Mich App 597; 246 NW2d 311 (1976), *Larson v Pittman,* 3 Mich App 348; 142 NW2d 479 (1966). In *Cooper,* this Court held:

"The trial court erred as a matter of law in not granting foreclosure. A trial court should not, in exercising its discretion as a court of equity, dismiss a foreclosure action brought under an acceleration clause for overdue payment where the breach of the contract is not disputed. *Russell v Glantz,* 57 Mich App 44; 225 NW2d 191 (1974), *Dumas v Helm,* 15 Mich App 148; 166 NW2d 306 (1968)." 70 Mich App at 598.

No reason is advanced why the rationale of *Cooper* should not be extended to commercial cases covered by the Michigan Uniform Commercial Code particularly in view of the code's policy to encourage certainty in commercial transactions. We believe it should be so extended.

A security agreement is generally effective according to its terms, both between the parties and against subsequent purchasers of the collateral. MCLA 440.9201; MSA 19.9201. Because plaintiff's security interest was properly perfected by filing, defendant Sulaka is presumed to have had notice of it and he, like defendants Denha and Shaya, is subject to the provisions of the security agreement.

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided for in that agreement and he "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure". MCLA 440.9501(1); MSA 19.9501(1). In addition, "[u]nless otherwise agreed a secured party has on default the right to

take possession of the collateral". MCLA 440.9503; MSA 19.9503. Neither of these provisions makes an exception for "technical defaults" not resulting in financial injury to the secured party.[3] Indeed, if a security agreement is to be truly effective according to its terms, any act performed by a debtor in clear contravention of those terms must give the creditor a right to the statutory and agreed upon remedies whether he suffered a pecuniary loss or not.[4]

This case is reversed and remanded for proceed-

---

[3] The fact that plaintiff has, since the commencement of this action, accepted monthly payments on the underlying debt should not be viewed as a waiver of his right to foreclose on the security agreement. MCLA 440.9506; MSA 19.9506, provides:

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 9504 or before the obligation has been discharged under section 9505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney's fees and legal expenses."

The official UCC Comment to this statute explains that to take advantage of this redemption provision "The debtor must tender fulfillment of all obligations secured, plus certain expenses: if the agreement contains a clause accelerating the entire balance due on default in one installment, the entire balance would have to be tendered." Although defendants have made their monthly payments, they have not tendered the entire balance of the debt owing. They have not redeemed the collateral and there is nothing in the UCC that would bar plaintiff from accepting installment payments to reduce the total amount owed while proceeding with foreclosure.

[4] Although this decision appears to visit a harsh result upon defendants, it should be noted that MCLA 440.9506; MSA 19.9506 grants a right of redemption to the defaulting party "[a]t any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 9504 or before the obligation has been discharged under section 9505(2) * * * ."

Official UCC Comment 5 to MCLA 440.9504; MSA 19.9504 notes that the secured party must give the debtor reasonable notification before disposing of the collateral and concludes "at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire."

The foregoing strongly suggests that defendants must be given

ings in conformity with this opinion. The trial court is directed to set a reasonable time to serve as the period during which defendants can redeem their interests, pursuant to MCLA 440.9506; MSA 19.9506, and MCLA 440.9504; MSA 19.9504. Costs to plaintiff.

Judge BEASLEY concurs in the result only.

---

reasonable time to arrange alternate financing. (Section 9505[2] includes an express 30-day waiting period, in circumstances where the section is operative.)