PAPO v AGLO RESTAURANTS OF SAN JOSE, INC

Docket No. 80522. Submitted June 24, 1985, at Detroit.—Decided February 18, 1986.

Plaintiff, Michael Papo, doing business as PSS Associates, met defendant Robert B. Solomon, president of defendant Olga's Kitchen, Inc., in December, 1976. At that time, plaintiff expressed interest in investing in the Olga restaurants. Plaintiff eventually invested in three of Olga's subsidiaries, including a San Jose, California restaurant. Plaintiff's investment in the San Jose restaurant was in the form of an equipment lease with plaintiff as lessor and defendant Aglo Restaurants of San Jose, Inc., as lessee. Under the equipment lease, plaintiff provided the capital to purchase the restaurant equipment and to improve the premises which defendant Aglo Restaurants of California, Inc., a wholly-owned subsidiary of Olga, had leased from the Eastridge Mall in San Jose. The cost of the leasehold improvements was $251,843 and the cost of the restaurant equipment was $99,795. Thus, plaintiff invested a total of $351,638 in the San Jose restaurant. Defendant Solomon personally guaranteed Aglo-San Jose's obligation under the equipment lease, which was dated June 1, 1978, and was to run for five years. Under the lease, Aglo-San Jose was required to make monthly payments of $8,609, thus providing plaintiff a 14% annual return on his investment. At the end of the lease

REFERENCES

Am Jur 2d, Attorneys at Law §§ 245 *et seq.*, 248, 249, 277 *et seq.*

Am Jur 2d, Contracts §§ 352, 521.

Am Jur 2d, Corporations §§ 43-54.

Am Jur 2d, Damages §§ 154, 212 *et seq.*

Am Jur 2d, Interest and Usury §§ 34, 35.

Appealability, under 28 USCS § 1291, of order awarding or denying attorneys' fees. 73 ALR Fed 271.

Attorney's charging excessive fee as ground for disciplinary action. 11 ALR4th 133.

Contractural liquidated damages provisions under UCC Article 2. 98 ALR3d 586.

See also the annotations in the ALR3d/4th Quick Index under Attorneys' Fees; Contracts; Damages; Interest and Usury; Piercing the Corporate Veil.

term, Aglo-San Jose had the option to purchase the equipment at fair market value or return the equipment to plaintiff in Chelsea, Michigan. Under the equipment lease, Aglo-San Jose agreed that the restaurant equipment would remain at the San Jose restaurant unless written consent for its removal was given by the plaintiff. The San Jose restaurant opened in September, 1978, and was closed in July, 1979, without notification to plaintiff. The equipment was removed and transferred to other Olga restaurants, mostly in Michigan. Plaintiff never gave written consent for the removal of the equipment. The leasehold improvements were not removed pursuant to the lease with the Eastridge Mall. Following several settlement meetings, on December 13, 1979, plaintiff, as authorized by the equipment lease, notified defendants of default, terminated defendants' rights under the contract, and accelerated the remaining payments. Defendants, however, continued to make monthly payments which plaintiff accepted. On March 20, 1980, plaintiff commenced an action against the defendants in the Oakland Circuit Court, seeking as damages the accelerated payments, return of the lease equipment, the present value of the leasehold improvements, costs and attorney fees. In February, 1983, defendants attempted to exercise the option to purchase the restaurant equipment. On April 14, 1983, plaintiff requested that defendants inform him of the amount they considered to represent the fair market value of the equipment. In May, 1983, defendants indicated that the fair market value of the restaurant equipment and leasehold improvements in the San Jose restaurant was $31,973. On June 8, 1983, plaintiff responded that the amount was insufficient and that defendants were precluded from exercising the option because they were in default and their rights under the lease had terminated. Following a bench trial, the trial court, David F. Breck, J., rendered the following findings of fact, conclusions of law and awards of damages in regard to defendants Olga, Solomon and Aglo-San Jose (a judgment of no cause of action was entered in regard to defendant Aglo-California): (1) Defendants had breached the equipment lease. (2) Plaintiff had properly invoked the acceleration clause in December, 1979, at which time the contractual 18% interest rate for late payment had begun to accrue upon the full amount of the accelerated payments. (3) Although defendants had continued to make the monthly rental payments until the expiration of the lease term $216,514.21 was owed by defendants. (4) Plaintiff was entitled to $31,738.25 as damages for defendants' continued possession of the equipment after the expiration of the lease until the date of judgment and $80.35 per day thereafter until the equipment

was returned. (5) Plaintiff was entitled to attorney fees of $72,102.89. (6) Aglo-San Jose, Solomon, and Olga were jointly liable. Defendants Olga, Solomon and Aglo-San Jose appeal as of right from the order and judgment to that effect. *Held:*

1. The parties concede that the removal of the equipment constituted a breach of the equipment lease.

2. The trial court correctly ruled that plaintiff properly invoked the acceleration clause regardless of whether he had suffered a pecuniary loss or not.

3. The remedy provision contained in the lease is neither a liquidated damages clause nor an illegal penalty. The acceleration clause does not constitute a liquidated damages clause. Nor is the amount out of proportion to the contract (since it is the balance due and owing). Therefore, there is no penalty. The imposition of 18% interest is a reasonable figure upon which the parties could agree. The trial court properly refused to treat the acceleration clause as anything other than an acceleration clause.

4. The parties, by not providing the trial court with an annuity schedule of the debt owed to the plaintiff, did not permit the trial court to reach the correct conclusion in computing the damages under the acceleration clause. Damages can be calculated by construction of another annuity schedule pursuant to the Court of Appeals opinion. The trial court's computations are reversibly erroneous. The matter is remanded to the trial court for the computation of damages using the method set forth in the Court of Appeals opinion. The trial court may require submissions by the parties as it deems necessary.

5. The computation of damages for foregone rental must look at the reasonable rental value of the equipment commencing on May 31, 1983, the last day of the lease. The trial court's computation on its face does not appear to take this factor into account. The matter is remanded to the trial court for computation of damages for foregone rental in light of the Court of Appeals opinion.

6. Noting defendants' assertion that they cannot return the equipment, the Court of Appeals stated that the defendants should compensate plaintiff for the fair market value of the equipment as of the end of the lease. That amount is $18,063, the fair market value of the equipment on the last day of the lease, and an amount for foregone rental (at a rate not to exceed reasonable rental value) until the payment of damages for the loss of the equipment.

7. The trial court erred in placing the burden on defendants

to disprove plaintiff's attorneys' submissions regarding their fees. The trial court must not find the submissions to be prima facie accurate. The issue is remanded to the trial court for an evidentiary hearing on attorney fees in light of the Court of Appeals opinion.

8. The trial court did not err in piercing the corporate veil of Aglo-San Jose to find Olga jointly liable on the judgment.

Affirmed in part, reversed in part and remanded. Jurisdiction is not retained.

1. Contracts — Acceleration Clause — Pecuniary Loss.

An acceleration clause contained in a contract may be properly invoked in accordance with the terms of the contract whether the party invoking the clause has suffered pecuniary loss or not.

2. Contracts — Liquidated Damages — Illegal Penalties.

A contractual provision for liquidated damages is an agreement by the parties fixing the amount of damages in the case of a breach of that contract; this remedy is particularly applicable where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature; the distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and the subject matter of the cause of action.

3. Contracts — Acceleration Clause — Interest on Payments.

A trial court errs in computing the damages due under an acceleration clause in an equipment lease where it fails to recognize that the monthly payments being accelerated contain implicit interest which accrues over time; if the payments are accelerated, then that interest cannot be imposed on the borrower.

4. Damages — Leases.

The measure of damages where equipment is held over beyond the expiration of an equipment lease is the reasonable rental value of the equipment for the time the lessee retained possession commencing on the last day of the lease; where the equipment cannot be returned, the measure of damages is the fair market value of the equipment as of the last day of the lease and an amount for foregone rental, at a rate not to exceed reasonable rental value, until the payment of damages for the loss of the equipment.

5. Appeal — Contracts — Breach of Contract — Attorney Fees.

An award of attorney fees will be upheld on appeal absent an

abuse of discretion; however, when a contract specifies that a breaching party is required to pay the other side's attorney fees, only reasonable, not actual, attorney fees may be awarded.

6. ATTORNEY AND CLIENT — ATTORNEY FEES.

Facts to be taken into consideration in determining the reasonableness of attorney fees include, but are not limited to, the following: (1) the professional standing and experience of the attorney; (2) the skill, time, and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client; the trial court need not detail its findings as to each factor considered.

7. APPEAL — ATTORNEY FEES — BURDEN OF PROOF.

A trial court errs in placing the burden on the defendants to disprove the plaintiff's attorney's submissions regarding the amounts requested for plaintiff's attorney fees; a trial court should not find such submissions to be prima facie accurate.

8. CORPORATIONS — PIERCING THE CORPORATE VEIL.

No single rule delineates when a corporate entity may be disregarded; the entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused.

*Joseph S. Radom, P.C.* (by *Joseph S. Radom* and *Thomas B. Radom),* and *Bushnell, Gage, Doctoroff & Reizen* (by *Martin M. Doctoroff),* for plaintiff.

*Evans & Luptak* (by *Gordon S. Gold),* for defendants.

Before: R. M. MAHER, P.J., and BRONSON and D. F. WALSH, JJ.

R. M. MAHER, P.J. In the mid-1970's, defendant Olga's Kitchen, Inc.,[1] was in the beginning stages of becoming a nationwide chain of restaurants specializing in serving Greek food. In December, 1976, plaintiff, Dr. Michael Papo, met defendant

---

[1] During the mid-70's, defendant Olga's Kitchen, Inc., was known as Aglo Restaurants, Inc.

Robert Solomon, president of Olga, at the opening of an Olga restaurant in Ann Arbor. At that time, plaintiff expressed interest in investing in the Olga restaurants.

In November, 1977, plaintiff made an offer to Solomon to invest in Olga's restaurants in Chicago. Subsequent negotiations ensued and plaintiff eventually invested in three of Olga's subsidiaries, including a San Jose, California store. Plaintiff's investment in the San Jose store was in the form of an equipment lease with plaintiff as lessor and defendant Aglo restaurants of San Jose, Inc., as lessee.

Under the equipment lease, plaintiff provided the capital to purchase the restaurant equipment and to improve the premises which defendant Aglo Restaurants of California, Inc., a wholly-owned subsidiary of Olga, had leased from the Eastridge Mall in San Jose.

The cost of the leasehold improvements was $251,843 and the cost of the restaurant equipment was $99,795. Thus, plaintiff invested a total of $351,638 in the San Jose store.

Defendant Solomon personally guaranteed Aglo-San Jose's obligation under the equipment lease. The equipment lease was dated June 1, 1978, and was to run for five years. Under the lease, Aglo-San Jose was required to make monthly payments of $8,609, a figure which plaintiff demanded in order to realize a 14% annual return on his investment. At the end of the lease term, Aglo-San Jose had the option to purchase the equipment at fair market value or return the equipment to plaintiff in Chelsea, Michigan.

The San Jose store opened in September, 1978. Almost from the start, it became clear that the store was a losing proposition. In May, 1979, plaintiff refused Solomon's request to reduce the

monthly lease payments. In July, 1979, the store was closed without notification to plaintiff. The equipment was removed and transferred to other Olga stores, mostly in Michigan.[2]

Under the equipment lease, Aglo-San Jose had agreed that the restaurant equipment would remain at the San Jose store unless written consent for its removal was given by plaintiff. Plaintiff never gave written consent.

After plaintiff learned of the closing of the San Jose store, four or five settlement meetings were held between September and early December of 1979. The meetings were fruitless and on December 13, 1979, plaintiff, as authorized by the equipment lease, notified defendants of default, terminated defendants' rights under the contract, and accelerated the remaining payments. Defendants, however, continued to make monthly payments which plaintiff accepted.

On March 20, 1980, plaintiff commenced this action, seeking as damages the accelerated payments, return of the lease equipment, the present value of the leasehold improvements, costs and attorney fees.

In February, 1983, defendants attempted to exercise the option to purchase the restaurant equipment. On April 14, 1983, plaintiff requested that defendants inform him of the amount they considered to represent the fair market value of the equipment. In May, 1983, defendants indicated that the fair market value of the restaurant equipment and the leasehold improvements in the San Jose store was $31,973. On June 8, 1983, plaintiff responded that the amount was insufficient and that defendants were precluded from exercising

---

[2] The leasehold improvements were not removed pursuant to the lease with the Eastridge Mall.

the option because they were in default and because their rights under the lease had terminated.[3]

Following a bench trial, the trial court rendered the following findings of fact, conclusions of law, and awards of damages in regard to defendants Olga, Solomon and Aglo-San Jose. A judgment of no cause of action was entered in regard to defendant Aglo-California:

(1) Defendants had breached the equipment lease;

(2) Plaintiff had properly invoked the acceleration clause in December, 1979, at which time the contractual 18% interest rate for late payment had begun to accrue upon the full amount of the accelerated payments;

(3) Although defendants had continued to make the monthly rental payments until the expiration of the lease term, $216,514.21 was owed by defendants;[4]

(4) Plaintiff was entitled to $31,738.25 as damages for defendants' continued possession of the equipment after the expiration of the lease until the date of judgment and $80.35 per day thereafter until the equipment was returned.

(5) Plaintiff was entitled to attorney fees of $72,102.89.

(6) Aglo-San Jose, Solomon, and Olga were jointly liable.[5]

Defendants Olga, Solomon and Aglo-San Jose appeal as of right, raising numerous issues. It is conceded that the removal of the equipment con-

[3] Paragraph 6 of the equipment lease specifically states that the right to exercise the option is contingent upon the lease being in full force and effect and the lessee not being in default.

[4] The trial court arrived at this figure by applying the monthly payments to satisfy the accruing interest on the accelerated debt before reducing the debt principal.

[5] This result was achieved by the trial court's "piercing the corporate veil".

stituted a breach of the equipment lease.[6] There-
fore, the first conclusion of law to fall under
appellate scrutiny is the trial court's decision that
the acceleration clause was properly invoked by ·
plaintiff.

I

Defendants contend that in a breach of contract
case a plaintiff is entitled only to just compensa-
tion for the loss actually sustained. Therefore, they
reason that acceleration clauses can only be in-
voked if the plaintiff proves actual loss. We dis-
agree.

We find this case to be similar to *Gorham v
Denha,* 77 Mich App 264; 258 NW2d 196 (1977).
There, as here, it was not disputed that defendants
breached a security agreement. Similar to this
case, the payments on the underlying indebtedness
were kept current. As in this case, the plaintiff
elected to remedy defendants' default by the accel-
eration of payments. In *Gorham,* the trial court
found a "technical" default (similar to defendant
Solomon's assertion, see note 6, *supra)* and, in the
absence of a finding of actual loss by plaintiff,
denied plaintiff's motion for summary judgment.

This Court, after discussing both the applicable
case law and Article 9 of Michigan's Uniform
Commercial Code, held:

"[I]f a security agreement is to be truly effective
according to its terms, any act performed by a debtor in
clear contravention of those terms must give the credi-
tor a right to the statutory and agreed upon remedies
whether he has suffered a pecuniary loss or not." (Foot-
note omitted.) 77 Mich App 270.

---

[6] Although defendant Solomon vigorously contends that the breach
was at most "technical" in nature.

We find no persuasive reason to distinguish this case from *Gorham v Denha, supra.* Accordingly, we hold that the trial court correctly ruled that plaintiff properly invoked the acceleration clause.

Having so decided, we now confront the question of reviewing the propriety of the remedy provided for in the lease. Defendants contend that the remedy provision of the lease constitutes a liquidated damages clause which exacts an illegal penalty and should be reviewed as a liquidated damages clause.

A contractual provision for liquidated damages is nothing more than an agreement by the parties fixing the amount of damages in the case of a breach of that contract. *Roland v Kenzie,* 11 Mich App 604; 162 NW2d 97 (1968). This remedy is particularly applicable where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature, *Central Trust Co v Wolf,* 255 Mich 8; 237 NW 29 (1931). The distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and the subject matter of the cause of action. *Watson v Harrison,* 324 Mich 16; 36 NW2d 295 (1949); *Malone v Levine,* 240 Mich 222; 215 NW 356 (1927).

However, extensive discussion of this point is unnecessary since we hold that the remedy provision is neither a liquidated damages clause nor an illegal penalty. The equipment lease provided that the breach of any of the terms of the agreement constitutes a default, that, upon default, plaintiff could accelerate all future payments, and that any payments not made when due shall accrue at 18% annual interest. The "damages" due at the time of default are nothing more than that amount attributable to principal in the remaining periodic pay-

ments on the lease. Clearly, that is an ascertainable amount. Therefore, the acceleration clause does not constitute a liquidated damages clause.[7] Nor is that amount out of proportion to the contract (since it is the balance due and owing). Therefore, there is no penalty. The imposition of 18% interest does not change this conclusion. It is a reasonable figure upon which the parties could agree. This Court will indulge every presumption in favor of a valid contract, *Roland v Kenzie,* *supra.* The trial court properly refused to treat the acceleration clause as anything other than an acceleration clause.

However, the trial court's method of computing damages bears some scrutiny. While we are not in complete agreement with the trial court, we do not believe that the parties permitted the trial court to reach the correct conclusion. Nowhere in the record did the parties provide an annuity schedule of the debt owed to plaintiff. In the absence of such a schedule, the trial court could not accurately break down payments on the debt into payments for accrued interest and the reduction of principal.[8] Had an annuity schedule been computed, it would have been a simple matter to determine the amount of principal remaining on the debt at the time of the breach. The schedule would show a figure for balance due. Only that amount could properly be accelerated under the agreement.

Having determined that amount, it will be remembered that, according to the agreement, inter-

---

[7] This conclusion renders moot defendants' argument that defendants were entitled to a directed verdict because at the time of defendants' motion plaintiff had, allegedly, not introduced proof of the elements necessary to sustain a liquidated damages provision.

[8] An annuity schedule takes basic information—in this case, the initial sum owed, the amount of the monthly payment, and the number of payments—and shows on a month-by-month basis the portion of each payment attributable to interest and the portion of each payment attributable to principal.

est for late payment of the accelerated amount accrued at the annual rate of 18%. Further, it will be remembered that defendants continued to make monthly payments in the amount set forth in the contract. From this information, can the amount of damages, if any, be calculated?

We conclude that damages can indeed be calculated by construction of another annuity schedule. This schedule will have the balance due at the time of acceleration as the initial sum, the interest rate as 18%, and a monthly payment of $8,609. The number of payment periods will correspond to the number of payments made by defendants after acceleration. The figure for balance due, if any, is the amount of damages owed plaintiff by defendants.[9]

Even acknowledging the absence of annuity schedules for use by the trial court, we are constrained to hold that the trial court's computations are reversibly erroneous. The trial court failed to recognize that the monthly payments contain implicit interest which accrues over time.[10] If the payments are accelerated, then that interest cannot be imposed on the borrower. The accelerated payments cannot be the same amount as the unaccelerated payments.

It would appear that defendants recognized the error of the trial court because they ask this Court to order that the trial court's damage figure be reduced to present value. While this method may

[9] Purely as a matter of mathematics, damages will accrue to the extent that the rate of interest on the initial debt was less than 18% annually.

[10] The annuity schedule makes this clear by showing period-by-period how much of the payment is attributable to accrued interest. The balance due figure represents the balance due on the principal. If the principal is ever fully paid off (assuming no penalty for prepayment), then there is no interest to accrue.

be mathematically supportable,[11] we conclude that utilizing it would be needlessly circuitous and convoluted.

Therefore, we remand this matter to the trial court for computation of damages using the method set forth above. The trial court may require submissions by the parties as it deems necessary.

## II

The next conclusion of law controverted by defendants is the trial court's award of $31,738.25 as damages for defendants' continued possession of the equipment after the expiration of the lease until the date of payment and $80.35 per day thereafter until the equipment is returned.

Defendants argue that the trial court's award of damages was based on an improper interpretation of paragraph 19 of the equipment lease. Paragraph 19 states:

"Any holding over after the expiration of the term with the consent of the Lessor, shall be construed to be a tenancy from month to month at the rents herein specified for the last month of the stated term and on the terms and conditions herein specified."

Defendants claim that since the lessor (plaintiff) did not consent and the lessees defaulted, any damages awarded should be based upon the fair market rental value of the equipment.

We agree with defendants that paragraph 19 is inapplicable. Without the plaintiff's consent, the equipment in fact was dispersed to other stores.

---

[11] As noted in the text, *supra,* each future payment has a component of interest in it. It is wrong to assume that a payment due in the future is of equivalent value to a payment due immediately. Utilizing a discount rate, each payment can be discounted to present value.

Plaintiff's exercise of the default option terminated the rental portion of the lease. Damages became fixed on the date plaintiff exercised his option. The trial court found that as of May 31, 1983, the last day of the lease, the fair market value of the equipment was $18,063.

In *Pasieczny v Bonkowski,* 260 Mich 107, 109; 244 NW 248 (1932), the Supreme Court noted that where property is held over "the measure of damages is reasonable rental value for the time the [lessee] retained possession". The computation of damages then must look at the reasonable rental value of the equipment commencing on May 31, 1983. The trial court's computation *on its face* does not appear to take this factor into account.[12] Therefore, we remand to the trial court for computation of damages for foregone rental in light of this Court's opinion.

Prior to leaving this issue, it is necessary to deal with the reality that defendants cannot (they assert) return the equipment. Defendants aver that some of the equipment has been dispersed to several stores and that some of it has been discarded. Obviously, it is unfair to charge defendants ad infinitum with rents. Logically, to put plaintiff in a position to rent out the equipment, defendants should compensate plaintiff for the fair market value of the equipment as of the end of the lease. As noted above, that amount is $18,063, the fair market value of the equipment as of the last day of the lease, and an amount for foregone rental (at a rate not to exceed reasonable rental value) until the payment of damages for the loss of the equipment.

---

[12] It must be remembered that were plaintiff to rent the equipment to a third party, the rental would be of used equipment of depreciated value.

## III

Defendants also argue that the trial court abused its discretion in awarding attorney fees. An award of attorney fees will be upheld absent an abuse of discretion, *Petterman v Haverhill Farms, Inc,* 125 Mich App 30; 335 NW2d 710 (1983). However, when a contract specifies that a breaching party is required to pay the other side's attorney fees, only reasonable, not actual, attorney fees should be awarded, *United Growth Corp v Kelly Mortgage & Investment Co,* 86 Mich App 82; 272 NW2d 340 (1978), *lv den* 406 Mich 855 (1979).

In determining whether attorney fees are reasonable, the trial court must consider: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client, *Crawley v Schick,* 48 Mich App 728; 211 NW2d 217 (1973).

In this case, the trial court's findings of fact do not specifically make reference to all of the *Crawley* criteria. However, the Supreme Court in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982), concluded:

"While a trial court should consider the guidelines of *Crawley,* it is not limited to those factors in making its determination. Further, the trial court need not detail its findings as to each specific factor considered."

Nevertheless, we are constrained to reverse the trial court's award. The trial court's findings of fact clearly place the burden on defendants to disprove plaintiff's attorneys' submissions regarding their requested amounts. In effect, the trial

court found the submissions to be, at least, prima facie accurate. This a trial court cannot do. *Petterman v Haverhill Farms, Inc, supra.* Accord: *Butt v DAIIE,* 129 Mich App 211; 341 NW2d 474 (1983). See, *Bradley v DAIIE,* 130 Mich App 34; 343 NW2d 506 (1983).

As in *Petterman, supra,* we remand this issue to the trial court so that an evidentiary hearing may be held on the question of attorney fees in light of this Court's opinion.[13]

## IV

Finally, defendants contend that the trial court committed error in piercing the corporate veil of Aglo-San Jose to find Olga jointly liable on the judgment. The trial court found, on the basis of the following deposition testimony by defendant Solomon, that Aglo-San Jose was the "mere instrumentality" of Olga:[14]

"*Q.* I want to know who operates the equipment in the Southland, Michigan store (which was removed from the Eastridge, California store)?

"*A.* Olga's Kitchen is operating the equipment.

"*Q.* Who operated the equipment when it was in San Jose prior to its moving?

"*A.* As far as I know, Olga's Kitchen.

"*Q.* Who is the lessee identified on Page 1?

"*A.* Aglo Restaurants.

"*Q.* Of San Jose?

---

[13] By remanding, we do not intimate that the requested amounts are per se unreasonable.

[14] We conclude that the trial court properly considered portions of the Solomon deposition despite the fact that they were not formally introduced into evidence. At the time of defendants' directed verdict motion, the necessity of resorting to those documents was occasioned by defendants. Furthermore, the trial court and defendants were aware, prior to the conclusion of plaintiff's case, that those documents would be relied upon by plaintiff in his attempt to pierce Aglo-San Jose's corporate veil.

"*A.* Yes. Do you understand, maybe you don't, *when I use the word Aglo Restaurants or Olga's Kitchen, I use those words meaning the same thing.*

"*Q.* I am getting the picture that you feel *they are an interchangeable entity.*

"*A. That's a right picture.*" (Emphasis added.)

In defendant Solomon's second deposition, he testified that he was president of Olga and that Olga "ran the San Jose store before it was closed". Solomon was the president of Aglo-San Jose and the decision to remove the equipment had to be approved by him. He testified:

"Well, as I understand it, anything that came out of [the San Jose store] that we could use in other stores was put in the other stores and was not part of the— cost to the other stores, that we retained control on that equipment, and that it is just being used in the stores."

Other equipment was put in storage; Olga paid the storage costs. In fact, Olga paid the monthly rent on the equipment lease. Solomon also stated that the Southland store (to which some of the equipment was transferred) was a separate and distinct entity from Aglo-San Jose "[o]nly to the degree they are technically different, but operated by us".

There appears to be no single rule delineating when a corporate entity may be disregarded. As the Supreme Court observed in *Klager v Robert Meyer Co,* 415 Mich 402, 411-412; 329 NW2d 721 (1982):

"The entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused."

See, also, *Soloman v Western Hills Development Co (After Remand),* 110 Mich App 257; 312 NW2d 428 (1981).

From our review of the facts of this case, we hold that the trial court properly pierced the corporate veil.[15] The trial court's conclusion that Aglo-San Jose was a "mere instrumentality" of Olga is particularly justified in light of Olga's act of taking possession of Aglo-San Jose's assets and treating them as its own without any consideration having been paid to Aglo-San Jose. The action is significant under these circumstances because it constituted the breach of the equipment lease that underlies this lawsuit. See, generally, *Herman v Mobile Homes Corp, supra; Kline v Kline,* 104 Mich App 700; 305 NW2d 297 (1981).

Affirmed in part, reversed in part and remanded. We do not retain jurisdiction. No costs, neither side having fully prevailed.

---

[15] Defendants argue that plaintiff, in order to pierce the corporate veil, had to show fraud, deceit and misrepresentation. The Supreme Court, on more than one occasion, has acknowledged that the corporate veil can be pierced in the absence of fraud, *Herman v Mobile Homes Corp,* 317 Mich 233; 26 NW2d 757 (1947); *Fors v Farrell,* 271 Mich. 358; 260 NW 886 (1935); *People, ex rel Attorney General v Michigan Bell Telephone Co,* 246 Mich 198; 224 NW 438 (1929).