NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0912n.06

Nos. 10-2560, 10-2613

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 20, 2012**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GRAND RAPIDS ASSOCIATES LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) ) | |
| v. | ) ) | |
| COOP PROPERTIES, LLC, TIMOTHY D. WESTRA, and DENNIS TOUSSAINT, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF |
| Defendants-Appellees, | ) ) | MICHIGAN |
| and | ) ) | |
| SMEELINK ACQUISITIONS, INC., | ) ) | |
| Defendant-Appellee/Cross-Appellant. | ) ) | |

Before:  GIBBONS and SUTTON, Circuit Judges; DUGGAN, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**   After Coop Properties, LLC ("Coop") breached its lease agreement with Grand Rapids Associates Limited Partnership ("GR Associates"), GR Associates sued Coop, Coop's owner Timothy Westra, Smeelink Acquisitions, Inc. ("Smeelink Acquisitions"), and Smeelink Acquisitions's President Dennis Toussaint (collectively "Coop Defendants") for breach of contract and fraud, among other claims.   GR Associates sought to pierce Coop's corporate veil to hold Smeelink Acquisitions and Westra personally liable.   The district court pierced Coop's corporate veil to hold Smeelink Acquisitions

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

liable but declined to hold Westra personally liable. The court rejected GR Associates's fraud claims, concluding that it did not reasonably rely on any representation Westra made about Coop's intended business plans. For the following reasons, we affirm the judgment of the district court.

## I.

Westra and Toussaint formed Smeelink Acquisitions in 2004 to acquire the assets of Smeelink Optical, a chain of eight optical retail stores in Michigan. Toussaint asked Westra to secure a lease for Smeelink Acquisitions with GR Associates. To do this, Westra formed Coop, a separate legal entity with no assets, then contacted Spatz Centers, Inc., GR Associates's agent. Westra spoke with a female employee about the possibility of leasing space then occupied by a Smeelink Optical retail store in Kentwood Marketplace, a shopping center. Although Westra could not remember the name of the employee with whom he spoke, the district court concluded that it was likely Vivian Thompson, a Spatz Centers's employee who may have been involved in drafting the lease. Westra testified that he believed he told the employee with whom he spoke that Coop intended to sublet the premises.

William Spatz, who negotiated the lease on behalf of GR Associates, was aware that Coop was a newly-formed legal entity. However, he did not conduct a background investigation of Coop because he believed that Coop was acquiring Smeelink Optical's assets and continuing to run the Smeelink Optical business. In fact, Coop's sole business was subletting the Kentwood Marketplace space to Smeelink Acquisitions.

On October 1, 2005, Coop signed a five-year lease with GR Associates for the Kentwood Marketplace space. The lease incorporated a rent concession of approximately $2 per square

2

foot. Despite the lease's prohibition against subletting without GR Associates's written consent, Coop entered into a subletting agreement with Smeelink Acquisitions that same day. The agreement provided that Coop would sublet the premises to Smeelink Acquisitions on a month-to-month basis at cost. Coop did not obtain GR Associates's consent to the sublease.

For the next thirty months, Smeelink Acquisitions paid rent directly to GR Associates, which accepted checks from Smeelink Acquisitions and credited Coop's account. Smeelink Acquisitions terminated the sublease with Coop effective March 31, 2008. Coop then ceased paying rent and attempted to terminate its lease with GR Associates. This lawsuit followed.

On December 1, 2008, GR Associates filed a seven-count complaint against Coop, Smeelink Acquisitions and Westra. The parties eventually entered a consent judgment as to Coop's liability, stipulating that Coop had breached its lease with GR Associates. A judgment for $105,001.76, plus interest and attorney's fees, was entered against Coop. After it discovered that Coop never had any assets of its own, GR Associates amended its complaint to reflect a new veil piercing theory of the case.

The parties cross-moved for summary judgment. The district court issued an opinion and order granting in part and denying in part the parties' motions on September 2, 2010. GR Associates timely appealed, and the Coop Defendants cross-appealed.

## II.

We review a district court's grant of summary judgment *de novo*. *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court must "draw

all reasonable inferences from the record in the light most favorable to the non-moving party" and may only grant summary judgment "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Bondex*, 667 F.3d at 676 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)).

### A.

The Coop Defendants argue that the district court erred in piercing Coop's corporate veil to hold Smeelink Acquisitions liable for Coop's breach of its lease. We do not agree.

A court should pierce an entity's corporate veil when "the corporate entity [is] a mere instrumentality of another entity or individual"; "the corporate entity [was] used to commit a fraud or wrong"; and "there [was] an unjust loss or injury to the plaintiff." *Foodland Distrib. v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996) (internal quotation marks and citation omitted). Whether the veil should be pierced is an equitable determination that must be made after considering the "entire spectrum of relevant facts." *Id.* at 380. "There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused." *Rymal v. Baergen*, 686 N.W.2d 241, 252 (Mich. Ct. App. 2004).

It is clear that Coop was a mere instrumentality of Smeelink Acquisitions. Coop's only business was subletting to Smeelink Acquisitions. Coop received no profits from the sublease contract, because it sublet the Kentwood Marketplace space to Smeelink Acquisitions at cost. Smeelink Acquisitions even sent rent payment checks directly to GR Associates. Smeelink Acquisitions also paid Coop's utility bills and expenses. Westra, the sole owner and officer of Coop, was also the chief financial officer of Smeelink Acquisitions. And as the sole owner and officer of Coop, Westra had complete decisionmaking power over Coop. Considering the entire

4

spectrum of relevant facts, it is clear that Coop was merely an instrumentality of Smeelink Acquisitions.

Contrary to the arguments of the Coop Defendants, "Michigan law does not require a showing of fraud or illegality before the corporate form will be disregarded." *Concept One Int'l, Inc. v. Nippecraft Ltd.*, No. 1:96-CV-565, 1997 WL 483248, at *5 n.2 (W.D. Mich. Feb. 14, 1997). Rather, the corporate veil may be pierced as long as, "the injustice sought to be prevented [is] in some manner relate[d] to a misuse of the corporate form short of fraud or illegality." *Soloman v. Western Hills Dev. Co.*, 312 N.W.2d 428, 432 (Mich. Ct. App. 1981).

Smeelink Acquisitions abused Coop's corporate form to exact an unjust benefit—below-market rental rates without the commitment of a long-term lease. The record shows that Smeelink Acquisition's president, Toussaint, told Westra, its CFO, to obtain a lease for Smeelink Acquisitions, and Westra then incorporated Coop solely for that purpose. Coop entered into a five-year lease with GR Associates that explicitly prohibited subletting the premises without GR Associates's prior written consent. Despite this prohibition, Coop executed a sublease agreement with Smeelink Acquisitions the same day it executed the primary lease with GR Associates. Coop leased the premises to Smeelink Acquisitions on a month-to-month basis at cost. Spatz testified that Coop received a rent concession of $2 per square foot compared to the rent typically charged because it signed a five-year lease, and that a month-to-month lease in the commercial real estate market typically requires a rent premium of at least thirty percent. The Coop Defendants presented no evidence to contradict Spatz's sworn testimony that Coop obtained a lease with a rent concession that would have been unavailable to a commercial tenant seeking a month-to-month lease. By subletting from Coop at cost, Smeelink Acquisitions

5

obtained the benefit of the rent concession and did not have to pay a rent premium, while simultaneously avoiding a five-year lease obligation. Smeelink Acquisitions clearly used Coop to obtain below-market rental rates, while avoiding the legal commitment of a long-term lease.

GR Associates also suffered an unjust loss or injury due to Coop's misuse. *Foodland Distrib.*, 559 N.W.2d at 381. Had Smeelink Acquisitions approached GR Associates directly and sought a month-to-month lease, GR Associates would not have granted a $2 per square foot rent concession, and likely would have charged Smeelink Acquisitions a rent premium. By subletting from Coop in violation of the terms of Coop's lease, Smeelink Acquisitions deprived GR Associates of at-market rental payments reflecting Smeelink Acquisitions's month-to-month tenancy.

GR Associates suffered another loss when Coop breached its lease and failed to pay rent for the remainder of the lease term. GR Associates used Coop to obtain favorable leasing terms, then terminated its sublease, leaving Coop—an entity with no assets or income—liable for rent payments it knew it would not make. Put simply, Smeelink Acquisitions used Coop, a shell, to obtain economically beneficial lease terms from GR Associates, knowing that it could terminate its sublease on a month-to-month basis, leaving GR Associates without a remedy for Coop's breach of contract. The equities favor piercing the corporate veil under such circumstances.

GR Associates argues that the district court erred in failing also to hold Westra personally liable for Coop's breach of contract. But GR Associates adduced no evidence that Westra used Coop to insulate himself from liabilities while obtaining an economic benefit. There is no evidence in the record that Coop was Westra's alter ego, that Westra intermingled Coop's assets with his own or that Westra shifted his personal liabilities onto Coop. This case

6

thus stands in stark contrast to *Foodland Distributors v. Al-Naimi*, a case in which the Michigan Court of Appeals pierced the corporate veil to reach the assets of individuals. 559 N.W.2d at 387. In that case, piercing the corporate veil was appropriate because those individuals held liable had caused the corporation, which was owned by a family member, to assume $400,000 of their personal debt for no consideration. *Id.* The record does not reflect Westra's use of Coop to obtain a personal financial benefit.

GR Associates argues that *L & R Homes, Inc. v. Jack Christenson Rochester, Inc.*, No. 250483, 2005 WL 782696 (Mich. Ct. App. April 7, 2005) and *Papo v. Aglo Restaurants of San Jose, Inc.*, 386 N.W.2d 177 (Mich. Ct. App. 1986) compel a contrary result. We do not agree.

In *L & R Homes*, the Court of Appeals of Michigan held that the trial court erred in refusing to pierce the corporate veil of one corporation, Rochester, Inc., to hold another corporation, Jack Christenson Inc., liable for Rochester's breach of a real estate lease. *See* 2005 WL 782696 at *3. But the court did not hold that the corporate veil should be pierced as to Rochester's sole owner, Jack Christenson. *Id.* As in *L & R Homes*, the district court here properly pierced the corporate veil of the entity abusing the corporate form—which in this case was Smeelink Acquisitions. Nothing in *L & R Homes* suggests that the court must pierce the corporate veil to hold an individual shareholder liable in the absence of evidence that the individual abused the corporate form for his personal benefit. *Papo v. Aglo Restaurants of San Jose, Inc.* does not support piercing the corporate veil as to Westra for the same reason: in *Papo*, the court pierced the corporate veil of one entity to hold another entity liable, not to hold the entity's owner personally liable. *See Papo*, 386 N.W.2d at 184–85 (piercing corporate veil of lessee corporation to hold parent corporation jointly liable on judgment). Accordingly, the

7

district court did not err in declining to pierce Coop's corporate veil to hold Westra personally liable for Coop's liabilities.

**B.**

GR Associates argues that the district court erred when it concluded that GR Associates's fraud claims failed because it could not show that it reasonably relied on Westra's alleged representations that Coop intended to acquire Smeelink Optical's assets and operate its business. We conclude that the district court properly dismissed GR Associates's fraud claims, although we reach this conclusion on different grounds.

After the district court resolved the summary judgment motions in this case, the Supreme Court of Michigan decided *Titan Insurance Company v. Hyten*, __ N.W. 2d __, 2012 WL 2226458 (Mich. June 15, 2012). In *Titan Insurance*, the court overruled a line of cases in which the Michigan courts had held that a party could not show reasonable reliance on a representation if the party had the means to determine that the representation was not true. *Titan Ins. Co.*, 2012 WL 2226458, at *3 n.4. *Titan Insurance* explicitly overruled *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 686 N.W.2d 770 (Mich. Ct. App. 2004) to the extent that it held that a party could not demonstrate reasonable reliance if he had been on notice that further inquiry into the truthfulness of the representation was needed. *Titan Ins. Co.*, 2012 WL 2226458, at *3 n.4. The district court relied on this line of cases in granting summary judgment to the Coop defendants on the fraud claims.

We affirm the district court's judgment, however, because Grand Rapids's fraud claims fail on another ground. To prove a claim for fraud, the plaintiff must show that the defendant "made a material representation . . . that . . . was false." *Titan Ins. Co.*, 2012 WL 2226458, at *3.

8

Grand Rapids failed to present admissible evidence that Westra misrepresented to Spatz the nature of the business that was to take over Smeelink Optical.

The record does not support GR Associates's claim that there is a genuine dispute of material fact regarding whether Westra directly represented to Spatz that Coop would be carrying on the business of Smeelink Optical. In his deposition, Spatz could not identify any individual with whom he spoke about the lease and indicated that he spoke with an "elderly gentleman" whom he believed to be Mr. Smeelink and "one or two other people" about the lease. He referred to another man with whom he had spoken after initial contacts with the elderly gentleman but conceded that this individual could have been a broker.

 Some weeks after Spatz had given his deposition, GR Associates filed a declaration of Spatz. While the declaration is somewhat equivocal, in it Spatz attempts to put before the court a version of events different from that to which he testified in his deposition. In the declaration Spatz states that, after initial contact with the elderly gentleman, he spoke with a representative of Smeelink Acquisitions and "now understand[s] and believe[s]" that individual to be Timothy Westra. Later in the declaration, Spatz, while never attesting to anything specific that Westra said to him, describes his own intent and focus in their conversation and his understanding at the end of it. Spatz states that he understood that the business signing the lease would be essentially the same business as the previous tenant but with a different name "based on what Mr. Westra told me."

To the extent that Spatz's declaration is inconsistent with his deposition in identifying Westra and attributing certain representations about the new tenant to Westra, it is inappropriate to consider its content as creating a genuine issue of fact. *See Aerel, S.R.L. v. PCC Airfoils,*

9

*L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (holding that an affidavit that directly contradicts deposition testimony should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction). But a close examination of Spatz's declaration reveals that he is not actually asserting a set of facts different from that to which he previously testified. Instead, he artfully does not suggest or state that he is relying on his own personal knowledge and recollection in identifying Westra or in attributing statements to Westra. Rather, he is giving an opinion he has formed at the time of the making of the declaration, an opinion whose basis is not revealed in the declaration in any way. This is insufficient to create a genuine issue of material fact because "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The declaration simply does not comply with Rule 56's requirements because Spatz does not declare that he knows that the person he spoke with was Westra or reveal why he now believes that to be the case. In any event, however the declaration is characterized, it may not be deemed to create a genuine issue of fact.

Even if Westra represented to Spatz that Coop was acquiring Smeelink Optical's assets and continuing its business, GR Associates had several reasons to doubt such a representation. Westra testified that he told a female employee of Spatz Centers that Coop intended to sublet the premises, and GR Associates submitted no evidence to contradict this testimony. Spatz conceded that Vivian Thompson was employed by GR Associates at the time the lease was negotiated and that she may have had a role in drafting the lease. Thompson was not deposed by either party, and GR Associates presented no evidence refuting Westra's sworn statement that he

10

told a female GR Associates employee—possibly Thompson—of Coop's intent to sublet the premises. Although Spatz testified that *he* was never told of Coop's intent to sublet the premises, it is well-settled that an agent's knowledge, acquired within the scope of that agency, is imputed to the principal. *Turner v. Mut. Ben. Health & Accident Ass'n*, 24 N.W.2d 534, 540 (Mich. 1946); *see also New Props., Inc. v. George D. Newpower, Jr., Inc.*, 762 N.W.2d 178, 187–88 (Mich. Ct. App. 2009). Because Spatz's declaration did not contradict Westra's testimony that he told a GR Associates employee of Coop's intent to sublet the premises, the district court reasonably inferred that the conversation occurred and that the employee's knowledge was imputed to GR Associates.

The reasonableness of this inference is buttressed by the fact that GR Associates's tenant file for Coop contained an unexecuted, draft lease listing Smeelink Acquisitions—not Coop— as the lessee. The draft lease, dated September 14, 2005, suggests that either Thompson or Spatz—the two individuals involved in drafting the Coop lease—was told that these two corporations were involved in some way in the lease arrangement.

Accordingly, we conclude that the district court did not err in granting the Coop Defendants's motion for summary judgment as to the fraud claims.

The judgment of the district court is affirmed.

11